THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BEN GOMEZ, Defendant-Appellant.

First District (2nd Division)   No. 83—1326

Opinion filed September 18, 1984.

James J. Doherty, Public Defender, of Chicago (Alison Edwards, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Jeanette Sublett, and Mark L. LeFevour, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

Ben Gomez (defendant), and two codefendants (Jacob Santana and Jesse Alanis) whose cases are not before us, were tried for murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1)) and armed violence (Ill. Rev. Stat. 1981, ch. 38, par. 33A—2) in a joint bench trial. Defendant was convicted of murder and found not guilty of armed violence. He was sentenced to 25 years' imprisonment.

The parties stipulated: The victim, 17-year-old Serafin Gonzalez, died of multiple gunshot wounds. Pellets from two different caliber guns, four .32-caliber and two .22-caliber, were found at the scene. An additional .32-caliber pellet and two other .22-caliber pellets were also recovered from the body. In the opinion of firearms examiner Richard Fournier, two weapons were used in the shooting.

At trial, Rogello Valasquez testified: On June 11, 1982, at approximately 11:40 p.m., he saw two men wearing hoods run through a gangway adjacent to his home. Soon after, he heard eight or nine gunshots, and then heard the men run back through the gangway.

Chicago police detective John Leonard testified: On July 11, 1982, he interviewed defendant Gomez. After being read his *Miranda* rights, defendant stated that on the night of the shooting he was with codefendants, Alanis and Santana, in Alanis' car. Gomez was driving. He stopped the car in an alley. Santana and Alanis got out of the car. They were wearing hooded grey sweatshirts and both were armed. Santana and Alanis walked through a vacant lot while Gomez waited in the car. He then heard several shots, and Alanis and Santana ran back to the car. They told Gomez that they had "hit" somebody. Gomez then drove back "to their neighborhood."

Leonard further testified that he then interviewed codefendant Santana, who told him: Prior to the shooting, the three codefendants were in Alanis' car. Alanis was driving. Gomez and Santana were each armed and wearing hooded grey sweatshirts. While Alanis waited in the car, Gomez and Santana walked through a vacant lot. Gomez alone shot the victim. After Gomez and Santana returned to the car, Santana threw his gun out the window.

Following Detective Leonard's testimony, defendant's attorney

moved for a mistrial, alleging the State had violated discovery. Defendant contended that the various documents tendered by the State to defendant had all indicated that Santana's custodial statement made to Leonard and others had stated that Gomez was only an unarmed passenger in the defendant's car, and that Gomez had not been involved in the shooting. Gomez' attorney argued that Leonard's trial testimony, in which he stated that Santana's custodial statement was to the effect that Gomez was the actual shooter, was contradictory to all of the discovery provided defendant, and that the State had violated its duty to advise defense counsel that Leonard was going to testify to this completely different statement by Santana. The court denied the motion for a mistrial.

Assistant State's Attorney Edward Pietrucha testified: On July 11, 1982, he and Detectives Leonard and Herigodt interviewed Santana. Santana told them that on the night of the shooting, the three codefendants were together smoking marijuana. Santana said Alanis wanted to "do a burn" on a member of a rival gang, so the three of them agreed to do so. Alanis went to his home and got a .32-caliber pistol. Santana went to his home and got a .38-caliber pistol. Alanis drove his own car, with Gomez riding in the front seat and Santana in the back. Upon seeing a youth riding a bicycle, Alanis stopped the car. Santana and Alanis, who were wearing grey hooded jackets, exited the car. Alanis alone shot the victim. They returned to the car, and Alanis drove away. Santana threw his gun out of the window.

Detective Michael Herigodt testified to the same custodial statement by Santana as Assistant State's Attorney Pietrucha.

Assistant State's Attorney Rima Cernius testified to an interview he conducted with codefendant Alanis on July 12, 1982: Alanis there told him that on the night of the shooting Gomez and Santana approached him and told him they each had weapons. Alanis said he saw a bulge in Santana's pants pocket. Alanis told Santana that he would not lend Santana his car, but that he would drive them. Alanis heard Santana and Gomez discuss "burning somebody" from a different gang. As they drove past a person working on his bicycle, Alanis saw Gomez and Santana looking at that person. Alanis parked the car. Gomez and Santana then left, and Alanis drove off immediately and headed home. Later, Gomez and Santana met Alanis at his home and told him that they "had unloaded" and that Alanis should "be careful."

At the conclusion of the State's case, Gomez moved for a directed verdict, which was denied. The court granted Alanis' motion for a directed verdict, finding that the evidence against Alanis (primarily his

own custodial statement) showed only that he had "abandoned some-body" a few blocks away from the subsequent murder and that such was insufficient to hold Alanis accountable for the murder. Santana's motion for a directed verdict was denied.

Gomez presented no evidence in his own behalf. Santana testified in his own behalf, presenting an alibi and denying having made any incriminating statements to the police. At the conclusion of the trial, the court found Santana and Gomez guilty of murder. Santana was sentenced to 25 years' imprisonment. Gomez was also sentenced to 25 years, from which he now appeals.

Gomez first contends that the trial court erred when it refused to consider Santana's custodial statement when weighing the evidence against Gomez. At the outset of the trial, the court had denied Gomez' motion for severance, and stated that each of the defendants' custodial statements would "only be used against the individual making the statement unless it is exculpatory." At the conclusion of the trial, the court reversed itself and stated that in considering the evidence against each defendant, it would consider only the particular defendant's own custodial statement and not any of the statements of the codefendants. Defendant contends that Santana's alleged custodial statement, wherein he said that Gomez was an unarmed passenger who remained in the car during the shooting, should have been considered by the court because it was "exculpatory" to Gomez. Defendant contends that Santana's statement was probative and relevant to the issues and therefore should have been considered by the court as evidence favorable to Gomez.

In Illinois, to be held accountable for a crime, the evidence must show that the defendant (1) solicited, aided, abetted, agreed or attempted to aid another in the planning or commission of the offense and (2) that defendant's participation took place before or during the offense and (3) that defendant's participation was accompanied by the concurrent, specific intent to promote or facilitate commission of the offense. (Ill. Rev. Stat. 1981, ch. 38, par. 5—2; *People v. Tillman* (1971), 130 Ill. App. 2d 743, 265 N.E.2d 904.) Here, it was the State's theory that Gomez, pursuant to his admission to being the driver of the getaway car, was accountable for the shooting.

Gomez contends that Santana's custodial statement, in which he stated that Gomez was only an unarmed passenger in the car, was exculpatory to Gomez. Gomez posits that Santana's statement was admissible as to Gomez pursuant to *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038.

Arguing that the trial court construed the accountability standard

"narrowly" in granting codefendant Alanis' motion for a directed verdict, Gomez contends that if the court had considered Santana's statement with regard to Gomez, the court would be compelled to find Gomez not guilty.

The State responds that the court properly refused to consider Santana's statement in Gomez' case because: (1) pursuant to *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, a court may not consider the hearsay statement of a codefendant; (2) defendant's own statement was a confession to the crime of murder under the theory of accountability pursuant to *People v. Jones* (1980), 86 Ill. App. 3d 278, 407 N.E.2d 1121, and therefore Santana's statement "could not have helped" Gomez, and (3) Santana's statement does not "explicitly exculpate" Gomez.

In reply, Gomez contends the State's arguments are incorrect: (1) *Bruton* does not apply here, as that case holds only that a court should not admit the statement of a codefendant who does not testify and whose hearsay statement "inculpates" his codefendant. Here, Santana testified, and his hearsay statement "exculpates" Gomez; (2) notwithstanding Gomez' own alleged custodial statement, either Gomez or Santana was lying, and the trial court had to determine which statement was true and so should have considered both statements in determining guilt or innocence; (3) Santana's custodial statement is in fact exculpatory to Gomez because the statement made Gomez a "passive non-participant" in the shooting, and mere presence does not constitute accountability.

In our opinion the present situation is inapposite to *Bruton v. United States*. That decision, based upon the right to confront adverse witnesses, is inapplicable because Santana did, in fact, testify and thus did not abridge any right of Gomez to confrontation. The rationale of *Bruton* did not preclude consideration of Santana's custodial statement as to Gomez.

■ We believe also that Santana's statement was relevant to the issue of the nature and degree of Gomez' involvement in the murder and, further, that it met the "indicia of trustworthiness" test set forth in *Chambers v. Mississippi*. There the United States Supreme Court held that a trial court errs when it excludes hearsay evidence of a third party's alleged confession to the crime charged to defendant in those situations where it is "obvious" that justice requires a departure from the rules of evidence barring admission of such evidence, and the hearsay evidence passes a four-prong test for trustworthiness. (See *People v. Woodruff* (1978), 62 Ill. App. 3d 949, 379 N.E.2d 907.) We find that the trial court here should have admitted Santana's cus-

todial statement in weighing the evidence against Gomez.

■ We do not find, however, that Gomez was prejudiced by this error. To warrant a new trial, a defendant must show that the outcome of his trial would have been different if the improperly excluded testimony had been admitted. (See *People v. Reppa* (1982), 104 Ill. App. 3d 1123, 433 N.E.2d 1091.) We cannot say that had the trial court considered Santana's custodial statement (which, at trial, Santana denied making), the court would have believed such statement and disbelieved defendant's own admission to being the getaway driver, and thereupon found defendant not guilty. A review of the record demonstrates that the trial court found Gomez guilty on the basis of Gomez' own statement. It has been held in Illinois that a person who knowingly drives a getaway car is accountable for the crimes committed. See *People v. Baynes* (1980), 87 Ill. App. 3d 1001, 410 N.E.2d 894; *People v. Jones* (1980), 86 Ill. App. 3d 278, 407 N.E.2d 1121.

■ Defendant next argues that he is entitled to a new trial because of the State's alleged discovery violation. As noted previously, defendant contends that the discovery materials provided by the State included summaries of codefendant Santana's custodial statement which indicated that Santana had said, *inter alia,* that Gomez was unarmed and remained in the car during the shootings. We have heretofore noted that at trial Detective Leonard testified that Santana, in his custodial statement, charged that Gomez was the person who had fired the shots which killed the victim. Defendant contends that the State violated discovery when it failed to advise defendant that Leonard would testify to a statement which was different than that reflected in the discovery documents.

The State contends it "substantially" complied with discovery. It learned only immediately prior to trial that Leonard was going to testify differently than was indicated in his police reports. The State contends that it had no duty to advise the defendant that one of its witnesses was going to testify in a manner "inconsistent" with that witness' written report. Even if it technically violated the discovery rules, the State urges that defendant was not prejudiced thereby.

In our opinion, the State's failure to advise defendant that Detective Leonard was going to testify differently than was indicated in his reports was improper under discovery rules in Illinois. The State's contentions that Leonard's substantially different testimony was unimportant or not discoverable are without merit:

> "Clearly the spirit, if not the express language, of Supreme
> Court Rules 412 and 415 require a prosecutor to disclose to de-

fense counsel any errors in documents that have been tendered to the defense as soon as the prosecution has such knowledge." (*People v. Burgin* (1979), 74 Ill. App. 3d 58, 72, 392 N.E.2d 251.)

However, we do not find that the State's misconduct requires a new trial because defendant suffered no prejudice thereby. "When prejudice is not shown by virtue of inaccurate discovery material, a new trial will not be ordered." (*People v. Pugh* (1982), 106 Ill. App. 3d 901, 908, 436 N.E.2d 737.) The record makes clear both that Officer Leonard's recollection was faulty and that the judge and the parties were aware of his error. In fact, Santana's custodial statement was that Gomez was an unarmed passenger in the car. The State presented the testimony of Assistant State's Attorney Pietrucha and Detective Herigodt, both of whom were present at Santana's interrogation, who agreed that Santana had not named Gomez as the shooter.

It is evident that the court was aware of the contradiction between Leonard's testimony and the written reports. It is also clear that the trial court did not understand Santana's statement to have named Gomez as the shooter. The State's theory of the case, and the stated basis for the court's guilty verdict as to Gomez, was that Gomez admitted that he knowingly drove his codefendants to and from the murder scene. More significantly, the trial court stated that it would not consider Santana's statement with regard to Gomez, and thus Gomez was not prejudiced by Leonard's testimony respecting Santana's custodial statement.

■ Defendant's third argument is that "the ends of justice were not served" when the trial court directed a verdict in favor of Alanis but convicted defendant based solely on confessions which, defendant asserts, were very similar. Although Gomez does not base his argument on any specific statutory or constitutional theory, he articulates a "discomfort" with the seemingly inconsistent verdicts. Defendant asserts:

> "Gomez, who was convicted, was no more culpable than Alanis, who was not. *** The similarities in their two statements are much more striking than the differences. Gomez waited in the car for the others to return, whereas Alanis claimed he drove off immediately. This fact, however, is more than offset by the fact that Alanis was the owner of the car, by the fact that he told the others not to shoot out of the car, by the fact that he apparently saw *** the target, before letting the others out. If Alanis was not guilty, neither was Gomez. If one considers the exculpatory portions of Santana's statement

in reviewing the evidence as to Gomez *** Gomez was *less* culpable than Alanis. Gomez was merely an unarmed passenger in Alanis' car and remained there the entire time.''

In our opinion, the trial court's action in granting Alanis a directed verdict does not undermine the guilty verdict as to Gomez since "the failure to convict a codefendant does not raise a reasonable doubt as to the guilt of the other defendant unless the evidence presented against both parties is identical." (*People v. Hiller* (1980), 92 Ill. App. 3d 322, 325, 415 N.E.2d 1202.) Here the evidence, primarily each defendant's confession, was not identical. Gomez' argument must therefore be rejected. The evidence here, if believed, is sufficient to prove Gomez guilty beyond a reasonable doubt. While we understand defendant's chagrin that the trial court, upon granting Alanis' motion for a directed verdict, denied defendant's same motion before Gomez' attorney even had an opportunity to present argument in support of it, such conduct does not alter our determination that the court's ruling is supported by the evidence.

■ In a final argument, defendant contends generally that Gomez received "unequal" treatment by the trial court because Gomez was indigent and thus could not raise bail nor hire a private attorney, and the result is "discrimination based on wealth." We must reject defendant's argument; the record demonstrates no such discrimination against defendant. The verdict was supported by the evidence, and defendant has not alleged, nor would the record support, a claim of ineffective assistance of counsel.

Both parties agree that the mittimus incorrectly reflects that defendant was convicted of armed violence when, in fact, the court found defendant not guilty of that offense. We direct the trial court to amend the mittimus to provide that defendant was found not guilty of the charge of armed violence.

For the reasons herein stated, defendant's conviction for murder is affirmed.

Affirmed.

HARTMAN, P.J., and DOWNING, J., concur.