THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL PRYOR, Defendant-Appellant.

Second District No. 2—86—0871

Opinion filed June 2, 1988.

G. Joseph Weller and Mary Kay Schick, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert F. Casey, State's Attorney, of Geneva (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Michael Pryor, was convicted of burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—1), and sentenced to 24 months' probation, the first 12 months to be served on intensive probation. He appeals contending that (1) insufficient evidence was presented at trial to submit an accountability instruction to the jury; (2) the State did not prove him guilty, as either a principal or accomplice, beyond a reasonable doubt; (3) the trial court erred when it ruled that the codefendant's guilty plea was inadmissible to show that defendant was not involved in the burglary; and (4) prosecutorial remarks made during closing arguments denied him a fair trial. We affirm.

Officer Robert Downs testified that at 10 p.m. on March 5, 1986, he was on patrol and received a dispatch that a black Oldsmobile was seen circling his patrol area, and at 10:55 p.m. he received another dispatch directing him to an apartment complex located at 835

Richards Street, Aurora, Illinois. Downs, who was alone in a police van and arrived at the scene with his headlights off, approached a black Oldsmobile that was parked parallel to a red van, and stopped approximately 25 feet from the car and van. The driver's side of the Oldsmobile was facing the passenger side of the van, and Downs observed that the passenger window of the van had been smashed out and that the sliding door of the van, which was facing the driver's side of the Oldsmobile, was open. Downs testified that he saw a silhouette standing inside the van, and when he turned his spotlight on, he saw a dark-haired, black man standing in the van and a blond-haired man sitting on the passenger side of the Oldsmobile. Upon clarification, Downs testified that the dark-haired man in the van was white. The dark-haired subject saw the police van and jumped from the red van to the driver's side of the Oldsmobile. Downs testified that, while the Oldsmobile had tinted windows, he could see into the car because his spotlight was directed at the rear window. Downs left his vehicle, momentarily losing sight of the dark-haired man, and as he reached the Oldsmobile he found defendant, who was the dark-haired man, sitting in the driver's seat and Edward Barkes, the blond-haired man, sitting on the passenger side trying to hide. Three cans of motor oil and two speakers, which were later identified as stolen, were found in the car. At trial, Officer Downs identified defendant as the dark-haired male in the driver's seat of the Oldsmobile, and noted from his report that defendant was 5 feet 8 inches and 175 pounds and Barkes was 5 feet 6 inches and 130 pounds. Cross-examination revealed that Downs did not note, either in his police report or at the grand jury proceedings, that he used the spotlight on his police van to observe defendant and Barkes while the burglary was in progress. On redirect examination, Downs testified that the routine use of equipment, such as a spotlight, would not normally be included in a police report, and that he was not questioned about his use of the spotlight at the grand jury proceedings.

Officer Torres testified that he received a call for backup assistance, and, upon arriving at the scene, he arrested the blond-haired male, later identified as Barkes, sitting on the passenger side of the Oldsmobile, and Officer Downs arrested the dark-haired male. Torres also testified that the two suspects had similar hairstyles but that Barkes' hair was longer.

Defendant testified that the Oldsmobile belonged to Barkes but that the title was registered in defendant's name because Barkes did not have a driver's license and could not obtain plates. Barkes had applied a special tint to the windows which created a mirror effect when

light was shined on the window. Defendant testified that he received a call from Barkes at his home in Montgomery, Illinois, at about 10 p.m. on March 5, 1986. Barkes wanted defendant to pick him up from work in Aurora, Illinois, and defendant arrived there at approximately 9:45 p.m. the same evening. Defendant and Barkes went back to Barkes' home in Montgomery for a short time, and then left for a gas station in Aurora. After leaving the gas station, Barkes, the driver, and defendant drove to an apartment complex to visit Barkes' friend. Defendant was not told who they were visiting nor did he ask. Barkes pulled alongside a parked red van, smashed in a window, and began to steal items from the van. After approximately five minutes, defendant noticed the headlights of an approaching vehicle which he thought might be a police car, and called out to Barkes, "[C]ome on, let's leave." Defendant testified that Barkes jumped to the driver's side of the Oldsmobile but that defendant changed seats with him, at Barkes' request, because Barkes did not have a driver's license and he was worried that Barkes might get arrested for driving without a driver's license. Defendant testified that he did not see the spotlight Downs claims to have shined at the van and car but only saw the blue and red mars lights on top of the police van. Defendant stated that he did not leave the scene when Barkes broke into the van because he was afraid of being "busted."

Prior to trial, defense counsel made a motion *in limine*, to which the State agreed, barring the State from introducing evidence of a statement by Barkes implicating defendant. Defense counsel also stated that he wanted to introduce into evidence a certified copy of Barkes' guilty plea and indictment related to this offense. Barkes had pleaded guilty to a reduced charge of attempted burglary and was sentenced to two years of imprisonment, but could not be located by authorities to begin his sentence. Defendant's offer of proof was:

"[T]he fact that the co-defendant Barkes pleaded guilty to a reduced charge. The offer of proof is that if I were allowed to present this evidence, number one, it would be consistent with our theory that Barkes is the guilty person and he, alone, was the offender who broke into Mr. Blagg's red van, and that Mr. Pryor neither assisted, aided or abetted or was a principal participant in that burglary.

And in furtherance of that theory we have Barkes's guilty plea which I'm asking to be made part of the record and impounded by the Court."

The State objected, stating that "the bare bones certified copy of conviction or the fact that Barkes pled guilty is not relevant to our

defendant's guilt." The trial judge denied defendant's request on relevancy grounds. During the instruction conference, the State offered, over defense counsel's objection, an instruction relating to accountability, arguing that there was sufficient evidence to show that defendant aided and abetted in the burglary; the trial court gave the instruction. The jury found defendant guilty of burglary, and he was sentenced to 24 months' probation.

Defendant contends that the State failed to prove him guilty of burglary beyond a reasonable doubt because the State's only evidence linking him to the crime was the vague, doubtful, and incredible testimony of Officer Downs. Defendant argues that Downs' initial misstatement that he observed a dark-haired, black subject standing in the van causes his identification testimony to be too vague, doubtful and uncertain to sustain his conviction.

■ When the identity of an accused is at issue, the testimony of a single witness is sufficient to convict even though that testimony is contradicted by the accused, provided that the witness is credible and was able to view the defendant under circumstances that are conducive to making a positive identification. (*People v. Rios* (1986), 145 Ill. App. 3d 571, 576-77, 495 N.E.2d 1103, *appeal denied* (1986), 112 Ill. 2d 589.) Discrepancies or omissions of detail do not destroy the validity of an identification but merely go to the weight of the testimony. (*People v. Palmer* (1984), 125 Ill. App. 3d 703, 709, 466 N.E.2d 640, *appeal denied* (1984), 101 Ill. 2d 574.) Here, Downs' misstatement regarding the race of the man he saw in the van was promptly corrected when called to his attention. Furthermore, Downs consistently distinguished the men by their hair color, testified that the man in the van had dark hair and the individual in the car's passenger seat had blond hair. Downs observed the dark-haired man jump from the van to the driver's side of the car, and when he walked to the car, the dark-haired man was still in the driver's seat. While Downs testified that he lost sight of the dark-haired man for a moment while he was exiting his car, the evidence does not indicate that he also lost sight of the blond-haired man. When Officer Torres arrived to provide backup assistance, he observed the dark-haired man, later identified as defendant, in the driver's seat, and the blond-haired man, later identified as Barkes, on the passenger side of the car.

■ Defendant also argues that the circumstances under which Downs identified him were highly questionable. He emphasizes Downs' testimony that he used a spotlight to illuminate the van and car but did not mention this fact in his police report or at the grand jury proceeding. Downs also testified that the routine use of equip-

ment, such as a spotlight, would not normally be included in a police report, and that he was not questioned about his use of a spotlight at the grand jury proceedings. In contrast, defendant testified that he did not recall seeing an illuminated spotlight on the police van. Defendant raises a credibility issue and, in such cases, all evidence must be viewed in a light most favorable to the prosecution. Conflicts in the evidence and the credibility of witnesses are for the jury to resolve; it is not our function to retry defendant. See *People v. Collins* (1985), 106 Ill. 2d 237, 261-62, 478 N.E.2d 267.

■ Furthermore, the jury may well have considered that defendant's version of the events on the night of the burglary was too improbable to be considered a factor in determining his participation in the crime. (See *People v. Crutcher* (1979), 72 Ill. App. 3d 239, 244, 390 N.E.2d 571.) Downs testified that he first received a call about a suspicious black Oldsmobile circling the area at 10 p.m., and another call again at 10:55 p.m. Defendant testified that he received a call from Barkes at about 10 p.m. on March 5, 1986, requesting defendant to pick him up from work, and drove from Montgomery to Aurora and picked Barkes up at about 9:45 p.m. the same evening. Defendant and Barkes drove back to Barkes' home in Montgomery, where they stayed for a short time, then proceeded to a gas station in Aurora, and ultimately went to the apartment complex where the burglary in question occurred. Notwithstanding the time inconsistency in defendant's testimony, to accept his version of the events on the night of March 5, 1986, the jury would have to believe that, by some happenstance, another black Oldsmobile was circling the apartment complex at 10 p.m. Defendant also testified that Barkes drove to the apartment complex, parking the car alongside a red van. During the course of Barkes' burglary, defendant noticed a vehicle which he thought might be a police car. After calling out to Barkes, defendant testified that Barkes jumped from the van to the driver's seat of the car, and because defendant was worried that Barkes might get arrested for driving without a driver's license, defendant moved to the driver's side. It seems odd that defendant had no apparent concern about the status of Barkes' driving privileges when Barkes drove to the apartment complex but was willing to switch seats, at the burglar's request, moments after the burglary. Defendant's testimony would also require the jury to believe that Barkes was willing to delay his escape from the scene of a burglary because Barkes and defendant were concerned that Barkes might be arrested for driving with a suspended driver's license. We conclude that there was ample evidence for a jury to find defendant guilty beyond a reasonable doubt.

■■ Defendant also contends that because the evidence only showed that defendant had either acted solely as a principal or as a nonparticipant, the trial court erred by giving the jury an accountability instruction. Alternatively, defendant argues that the evidence did not show, beyond a reasonable doubt, that defendant acted as an accomplice in the burglary. While it is improper to instruct the jury on accountability where the evidence only shows that a defendant acted as a principal (*People v. Lusietto* (1976), 41 Ill. App. 3d 205, 208, 353 N.E.2d 385), where there is evidence showing participation as a principal and assistant in commission of the offense, the State is entitled to an accountability instruction. (*People v. Williams* (1981), 97 Ill. App. 3d 394, 405, 422 N.E.2d 1091, *appeal denied* (1981), 85 Ill. 2d 574.) A defendant may be held accountable for the conduct of another where the evidence shows that he solicited, aided, abetted, agreed, or attempted to aid another in the planning or commission of an offense; his participation took place before or during the commission of the offense; and he had a concurrent, specific intent to facilitate or promote the commission of the offense. (Ill. Rev. Stat. 1985, ch. 38, par. 5—2; *People v. Gomez* (1984), 127 Ill. App. 3d 551, 554, 469 N.E.2d 329, *appeal denied* (1984), 101 Ill. 2d 584.) While mere presence at the scene of the crime or negative acquiescence in another's actions is ordinarily insufficient to establish accountability, one can be held accountable without physically participating in the overt act. Proof that the defendant was present at the crime without disapproving or opposing it can be considered, along with other circumstances, in determining whether the defendant aided or abetted the illegal conduct of another. (*People v. Clark* (1963), 30 Ill. 2d 67, 72, 195 N.E.2d 157; see' also *People v. Morgan* (1986), 149 Ill. App. 3d 733, 739-40, 500 N.E.2d 1121.) Here, we conclude that there was ample evidence warranting an instruction on accountability. Defendant admitted that the two men traveled to the burglary site in a car registered to him. He acknowledged that he was aware that Barkes was stealing from the van and admitted that he did not oppose the burglary or attempt to leave. He testified that he warned Barkes of an approaching vehicle which he believed was a police car and, thereafter, acceded to Barkes' request to drive the car from the scene. *Cf. People v. Jones* (1980), 86 Ill. App. 3d 278, 282, 407 N.E.2d 1121, *appeal denied* (1980), 81 Ill. 2d 596 (acting as a lookout or driving the getaway car is sufficient aiding and abetting to render one accountable).

■■ Defendant next contends that the trial court erred in denying his request to place in evidence Barkes' guilty plea because that plea would have provided a "link" in defendant's theory of nonpartici-

pation. Our review of the record shows that defense counsel's offer of proof was, at best, sketchy as to the nature of the evidence which counsel sought to use at trial. We can only conclude that defendant was attempting to use a certified copy of Barkes' guilty plea and indictment at trial. When the matter was first raised, counsel stated that he sought to introduce only a certified copy of the plea and indictment. When the matter was renewed during *voir dire*, defense counsel referred to evidence of "the fact that the co-defendant Barkes pleaded guilty to a reduced charge." The State objected, stating that the fact that Barkes pleaded guilty, or merely introducing the certified copy of conviction, was irrelevant without the entire judicial admission. Our conclusion is confirmed by the fact that defendant did not move to obtain a copy of the record of Barkes' guilty plea proceedings until March 18, 1987, after the notice of appeal was filed in this case.

Evidence that an accomplice has been convicted or has pleaded guilty to the same offense as the defendant is generally not admissible. Defendant must be tried based on evidence tending to show his guilt, not the guilt of another. (*People v. Mayden* (1979), 71 Ill. App. 3d 442, 444-45, 389 N.E.2d 901; *People v. Lotts* (1977), 48 Ill. App. 3d 684, 686-87, 362 N.E.2d 1387, *appeal denied* (1977), 66 Ill. 2d 634.) A certified copy of Barkes' guilty plea or conviction would do little to shed light on defendant's guilt or innocence; at most, it would show Barkes' guilt, but would not exonerate defendant. Furthermore, we note that, at trial, defense counsel made, and was granted, a motion *in limine* to bar the State from introducing evidence of a statement by Barkes implicating defendant. Even assuming, which we do not conclude, that Barkes' guilty plea would somehow exonerate defendant, the unfairness to the State is evident in that the State was barred from using Barkes' statement implicating defendant and had no opportunity to cross-examine Barkes because he could not be located by the authorities. *Cf. People v. Smith* (1984), 127 Ill. App. 3d 622, 629-30, 469 N.E.2d 634, *appeal denied* (1985), 101 Ill. 2d 592 (where a statement of an absent declarant identifying the defendant is admitted under one of the hearsay exceptions, the opposing party may impeach such statement with the declarant's prior inconsistent statement).

■ Defendant's last contention is that prosecutorial remarks during closing arguments denied him a fair trial. He argues that the State improperly: (1) characterized defendant's testimony as a confession; (2) inferred that defendant's statement, "[C]ome on, let's leave," established that defendant was acting as a lookout; (3) misinterpreted

defense counsel's closing argument to mean that Downs, a black police officer, would have difficulty identifying a white defendant; (4) asserted that defense counsel's argument was tantamount to accusing Downs of perjury; and (5) vouched for the credibility of Downs. We note that defense counsel did not object at trial to the State's argument that defendant's statement, "[C]ome on, let's leave," established that defendant was acting as a lookout. Furthermore, this remark and the State's characterization of defendant's testimony as a confession were not raised in defendant's post-trial motion for a new trial. Allegedly prejudicial remarks made during closing arguments, but not objected to at trial (*People v. Bartall* (1983), 98 Ill. 2d 294, 321, 456 N.E.2d 59), and issues not raised in a post-trial motion (*People v. Huckstead* (1982), 91 Ill. 2d 536, 543, 440 N.E.2d 1248) are waived. Notwithstanding the waiver rule, we find that the State's argument that the evidence established that defendant acted as a lookout did not exceed the bounds of proper and fair comment. In closing argument, the State may base its argument on the evidence presented or reasonable inferences therefrom. (*People v. Owens* (1984), 102 Ill. 2d 88, 105, 464 N.E.2d 261; *People v. Hairston* (1970), 46 Ill. 2d 348, 375, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658.) It was reasonable in this case to infer from the evidence that defendant was acting as a lookout. Defendant testified that he sat in the car while Barkes burglarized a van, that he knew what Barkes was doing but did not oppose him and that he warned Barkes when he saw an approaching vehicle which he believed was a police car.

■■■ While we do not condone the State's characterization of defendant's testimony as a confession, we do not find substantial prejudice warranting reversal as plain error. In light of the overwhelming evidence of defendant's guilt, we find any error harmless. *Cf. People v. Bracy* (1986), 152 Ill. App. 3d 566, 577, 504 N.E.2d 764, *appeal denied* (1987), 115 Ill. 2d 544 (claimed improper prosecutorial comments were harmless beyond a reasonable doubt in light of overwhelming evidence of the defendant's guilt).

■■■ Defendant also claims that the State's interpretation of the following remarks by defense counsel during closing argument was erroneous and prejudicial.

"What do all these factors tell you? They tell me that the most important aspect of the case which rests solely on Downs's testimony is that identity is important here. Do we have the right fella? We're looking at two people that are very similar.

* * *

Whether we've been to college and had psychology courses or whether we pick up a newspaper and read about surveys of identification or in fact cases where there's been a misidentification and the improper result came about. We know from our experience or our psychology courses or what we see in the paper that when you cross racial lines, sometimes there is a problem in identifying people of different races.

White people have a terrible time identifying black people. Black people are not necessarily any better, sometimes worse in the identification; and orientals seem to fare the worst of all.

Identification we know from our own experience in every day affairs, identification is fallible, eyewitness identification."

Defendant argues that the State misinterpreted the above comments by suggesting that Officer Downs, a black person, had some racial problem with identifying white people. We think that the State's interpretation was the most reasonable under the circumstances. Defense counsel, while stressing the importance of Downs' identification testimony, proceeded into a discourse about the difficulty of interracial identification. In this case, Downs initially testified that he saw a black male in the burglarized van, and, upon clarification, stated that the man was, in fact, white. We conclude that defense counsel's comments were intended to mean exactly what the State interpreted the comments to mean.

Defendant also asserts that the State erred in arguing that defense counsel accused Downs of perjury. During closing arguments, the State commented:

"And if Downs is going to make this up about the light, well, why not go further? If you're going to come here to Court and make it up and perjure yourself."

We consider that the State's comment was an invited response to defense counsel's insinuations that Downs did not use the spotlight on his police van when observing defendant and Barkes during the course of the burglary. (See *People v. Vriner* (1978), 74 Ill. 2d 329, 344, 385 N.E.2d 671 (in closing argument, the prosecution may respond to defense counsel's comments which invite or provoke a response).) Here, defense counsel attacked Down's credibility, emphasizing his failure to mention the use of his spotlight in his police report, to the State's Attorney prior to testifying before the grand jury, and at the grand jury proceedings. He suggested that if Downs had used his spotlight, this fact would have been revealed prior to Downs' testimony at trial and the State properly responded.

██ Defendant last asserts that the State improperly vouched for the credibility of Downs when stating: "Downs is right. Downs has told you what he saw. Downs is believable. *** Downs is correct." Defendant argues that these statements served to put the integrity of the State's Attorney's office behind the testimony of Downs, thereby denying defendant a fair trial. While it is improper for the State to place the integrity of the State's Attorney's office behind the credibility of a witness, the State may discuss the witnesses and their credibility and is entitled to assume the truth of the State's evidence. (*People v. Redman* (1986), 141 Ill. App. 3d 691, 702, 490 N.E.2d 958, *appeal denied* (1986), 112 Ill. 2d 566.) In *Redman*, the State commented that the witness-complainant "was telling you exactly what occurred." (141 Ill. App. 3d at 702.) We conclude that the State's remarks fell within the bounds of permissible comments directed at the credibility of Downs and the evidence in the case and note that the State's Attorney also told the jury that his belief regarding the case had nothing to do with the jury's decision.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

INGLIS and WOODWARD, JJ., concur.