**Ben GOMEZ, Petitioner–Appellant,**

v.

**James GREER, Warden, Menard Correctional Institution, Respondent–Appellee.**

No. 88–3192.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1990.

Decided Feb. 20, 1990.

Rehearing and Rehearing En Banc Denied March 21, 1990.

---

Robert D. Seeder, Federal Defender Program, Carol A. Brook, Office of the Federal Public Defender, Chicago, Ill., for petitioner-appellant.

Terence M. Madsen, Sally L. Dilgart, Asst. Attys. Gen., Thomas L. Ciecko, Deputy Atty. Gen., Office of the Atty. Gen., Crim. Appeals Div., Chicago, Ill., for respondent-appellee.

Before CUMMINGS and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Serophino Gonzalez, age 17, was fixing his bicycle the evening of June 11, 1982. Two youths got out of a nearby car and emptied their weapons into Gonzalez before fleeing. He died quickly. The police arrested Jesse Alanis, Jacob Santana, and Ben Gomez. In separate statements, they agreed that one person drove the car and the other two assassinated Gonzalez.

Gomez claimed that he drove and the others shot; his statements conceded knowledge that the others wanted to "burn" a member of a rival gang. Alanis claimed that he drove and left the scene while the others did the dirty work. Santana gave divergent statements (and different listeners remember his words differently). In all statements Santana cast Alanis as the driver. Once Santana said that he and Alanis got out of the car and Alanis

shot Gonzalez; Santana also said that he and Alanis did the shooting; in still a third statement Santana had it that Gomez and Santana approached Gonzalez, and Gomez did all the firing. At trial Santana denied making any of these statements.

The prosecution's theory was that Gomez told the truth: he drove, the others executed Gonzalez. After the state presented its case in the bench trial, Judge Donald Joyce acquitted Alanis. Gomez did not put on a defense; Santana presented an alibi and testified, denying everything. Judge Joyce convicted Santana and Gomez of murder, Gomez on an accountability theory. Each received 25 years in prison. Gomez's petition for collateral relief presents a single question: whether Judge Joyce should have considered as substantive evidence the portions of Santana's statements that depicted Gomez as a passenger. The trial judge considered out-of-court statements as admissions against their authors but ruled them hearsay with respect to the other two defendants. The Appellate Court of Illinois held that the restriction was error as a matter of federal constitutional law, *People v. Gomez*, 127 Ill.App.3d 551, 555–56, 82 Ill.Dec. 795, 799, 469 N.E.2d 329, 333 (1st Dist.1984), but thought it harmless. The district judge found no error of any kind.

Gomez wanted to use the portions of Santana's statements exculpating him as substantive evidence, and for this purpose they were hearsay: out-of-court statements offered to prove the truth of the matter stated. Hearsay does not become admissible just because it favors a defendant. Rules of evidence regulate the trial for the benefit of all. Many cases treat both the hearsay rule and its exceptions as compatible with the Fifth and Sixth Amendments. E.g., *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986); *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *Johnson v. Chrans*, 844 F.2d 482 (7th Cir. 1988). We may assume that when the hearsay rule, combined with other doctrines and circumstances, conspires to deprive the accused of a fundamentally fair trial, the legal rule yields. *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35

L.Ed.2d 297 (1973). In *Chambers* the conjunction of the hearsay rule and the voucher rule—a ban on impeaching one's own witnesses—prevented the defendant from making any use of reliable evidence clearing him of the charges; the Court held the joint effect unconstitutional. Restrictions on the use of hearsay standing by themselves have no similar effect, and like the district judge we conclude that Illinois furnished Gomez with a trial adequate to separate the guilty from the innocent.

Gomez put on no defense, so we know not what resources he may have had. But Santana testified, and Gomez had a full opportunity to elicit through cross-examination any exculpatory information Santana possessed. Alanis, who was acquitted at the conclusion of the prosecution's case, also could have been called as a witness. Freed of further prosecution by the acquittal and the Double Jeopardy Clause, Alanis could not have invoked the privilege against self-incrimination. Our case departs further from *Chambers* because the portions of Santana's statements favorable to Gomez were not particularly trustworthy; they were not against Santana's penal interest and conflicted with the other defendants' versions. *Lee v. Illinois,* 476 U.S. 530, 543–46, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514 (1986); *Sharlow v. Israel,* 767 F.2d 373, 379 (7th Cir.1985).

The hearsay rule coupled with the voucher rule made *Chambers* a lopsided contest. Gomez's trial was not lopsided; he not only had full access to live witnesses but also enjoyed the benefits of the hearsay rule. Just as Gomez could not use the exculpatory portions of Santana's statements in his favor, so the state could not use the inculpatory portions of Alanis's and Santana's statements against Gomez. Any rule of "fundamental fairness" would allow the state to put in context the exculpatory material Gomez wanted to introduce; one cannot put a fragment of a statement before the tribunal. Ill.R.Evid. 1:08, 15:31; *People v. Weaver,* 92 Ill.2d 545, 65 Ill.Dec. 944, 948, 442 N.E.2d 255, 259 (1982); *People v. Wadley,* 169 Ill.App.3d 1036, 1045, 120 Ill. Dec. 338, 345, 523 N.E.2d 1249, 1256 (1st Dist.1988); see also Fed.R.Evid. 106; *United States v. Nobles,* 422 U.S. 225, 241, 95 S.Ct. 2160, 2171, 45 L.Ed.2d 141 (1975). If, as Gomez stoutly insists, Santana's statements were especially trustworthy, the incriminatory portions would be admissible. Santana testified, so the Confrontation Clause of the Sixth Amendment would not bar the way. Yet Gomez did not want *all* of Santana's statements to come in; he wanted only the portions favorable to him. That is too thin to slice a statement.

Gomez contends that the Sixth Amendment gives him access to the exculpatory matter in Santana's statements even if the Fifth does not. He does not distinguish between Confrontation and Compulsory Process Clauses; we need not pursue their differences. We doubt that the Sixth Amendment adds anything to the Fifth in cases such as this, for Gomez did not seek to use the statement to confront an accuser (he was his own principal accuser), and he did not need process to get the statements. The obstacle was the hearsay rule, not inability to lay hands on the statements or their authors. No matter. The district judge concluded that Gomez had not preserved a claim under the Sixth Amendment. Whether Gomez alerted the state court to the Sixth Amendment foundation of his claim is disputed but unimportant, for he did not alert the district judge to it until his reply brief, leading the judge to deem it waived. A claim missing in both the petition for habeas corpus and the opening brief comes too late. *Wilson v. O'Leary,* 895 F.2d 378, 383–84 (7th Cir. 1990).

Remaining arguments, such as the contention that Judge Joyce misled Gomez by first saying he would consider the exculpatory parts of other defendants' statements and then changing his mind, do not state constitutional claims. Nothing in the Due Process Clause of the Fourteenth Amendment requires state judges to adhere to their preliminary rulings. See *United States ex rel. Young. v. Lane,* 768 F.2d 834 (7th Cir.1985).

AFFIRMED