THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ALFONSO AMAYA, Defendant-Appellant.
Third District   No. 3—93—0118

Opinion filed January 24, 1994.

George F. Taseff, of Bloomington (Ronald L. Lewis, of counsel), for appellant.

Joseph Navarro, State's Attorney, of Ottawa (John X. Breslin and Lawrence Michael Kaschak, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE SLATER delivered the opinion of the court:

This appeal arises out of defendant's conviction for controlled substance trafficking. We reverse and remand.

On January 29, 1992, defendant, Alfonso Amaya, and Charlie Gutierrez were travelling eastbound in an 18-wheel semi-tractor trailer on Interstate 80 in La Salle County when they were pulled over for speeding by Illinois State Police Sergeant Dan Gillette. Gillette approached the driver's side of the cab and noticed that Gutierrez, the driver, and the defendant were not wearing their seat belts. Gillette asked for their drivers' licenses and asked defendant if he was a co-driver of the truck. According to Gillette, defendant responded, "No, I'm just along for the ride." Gillette then asked Gutierrez to produce his vehicle registration, log book and bill of lading. Gillette asked Gutierrez to bring the documents and to come with him to the squad car, leaving defendant in the truck cab.

The documents produced by Gutierrez indicated that he was the owner of the truck and that he leased it to Glory Transport Company of Albuquerque, New Mexico. The bill of lading was signed by Gutierrez and showed that a cargo of potatoes had originated in Monte Vista, Colorado, and was destined for Westbury, New York.

Gutierrez appeared nervous to Gillette. He issued Gutierrez written warnings for speeding, following too closely and failing to wear a seat belt. Gillette then asked Gutierrez for consent to search the truck, and Gutierrez signed a written consent to a search.

As Gillette was exiting the squad car, he noticed that Illinois State Police Master Sergeant David Spahn had arrived to serve as back-up. Gillette advised Spahn that he had received consent to search

the truck and trailer and asked Spahn to "keep an eye" on defendant. Gutierrez remained in the squad car.

Gillette then approached the cab of the truck on the driver's side, opened the driver's door and entered the cab. He advised defendant that Gutierrez had consented to search the truck and asked, "do you have any drugs in the truck?" According to Gillette, defendant smiled and said, "Yes—no, I mean no." Gillette then told defendant to step from the cab and to go with the trooper waiting for him outside of the truck. Defendant stepped from the cab and jumped to the ground next to Spahn.

Spahn noticed that defendant's belt buckle was undone and that his right hand was stuck into his right pants pocket. Spahn asked defendant what he was grabbing and asked whether he had any knives, guns or weapons. Defendant turned his back to Spahn and put his right hand back into his right pocket. Spahn pushed defendant's hand away from the pocket and conducted a pat-down search. Spahn felt a "hard lump *** the size of a golf ball" in defendant's pants. Spahn removed a baggy from defendant's pocket and found that it contained a white powdery substance that Spahn believed was cocaine, and was later found to contain 3.7 grams of cocaine. Spahn placed defendant under arrest.

Gillette radioed for the "drug interdiction team," including Thor, a drug-sniffing dog, to come to the scene. When the "team" arrived, they conducted a "walk-around" of the truck, and Thor alerted on the trailer. Gillette asked Gutierrez to unlock the padlocks on the trailer. The troopers observed 42,000 pounds of packaged potatoes stacked in bags on wooden pallets four feet high extending to the rear of the trailer. The troopers and Thor climbed into the trailer and, behind a five-foot-high piece of cardboard, found three large plastic tool boxes. Thor alerted to the tool boxes.

The troopers forced open the toolboxes and found 193 bundles containing 945 pounds of cocaine. Each bundle was wrapped in a one- or two-kilogram plastic package, one-half to one-third of which bore the marking "Reina I." No fingerprints were found on any of the bundles or the tool boxes. Tests on the cocaine revealed that it had a purity level of 87%.

Defendant was indicted for controlled substance trafficking (Ill. Rev. Stat. 1991, ch. 56½, par. 1401.1(a)) and unlawful possession of less than 15 grams of a controlled substance (Ill. Rev. Stat. 1991, ch. 56½, par. 1402(c)). Following a jury trial, he was convicted of the charged offenses and sentenced to 50 years' imprisonment for the controlled substance trafficking and three years for the unlawful pos-

session of less than 15 grams of a controlled substance. Defendant appeals his trafficking conviction.

## I

Defendant first argues that there was insufficient evidence to support his conviction of controlled substance trafficking. Defendant believes his response to Gillette's question as to whether there were drugs in the truck ("Yes—no, I mean no") was not an indication of guilt. The State says that there was sufficient evidence to establish guilt beyond a reasonable doubt. We agree.

In order to establish that a defendant committed the crime of controlled substance trafficking, the State must prove the following elements:

> "(1) knowingly bringing or causing to be brought into this State; (2) for the purpose of delivery; (3) or with the intent to deliver; (4) a controlled substance." (*People v. Frieberg* (1992), 147 Ill. 2d 326, 346, 589 N.E.2d 508, citing Ill. Rev. Stat. 1987, ch. 56½, par. 1401.1(a).)

This court must examine the evidence in a light most favorable to the prosecution and will not reverse unless the evidence is so improbable as to justify a reasonable doubt as to the defendant's guilt. *Frieberg*, 147 Ill. 2d at 359-60.

While it could be argued that defendant's statement was made only in reference to the cocaine that he had in his pocket, the jury must resolve conflicts or inconsistencies in a witness' testimony. (*Frieberg*, 147 Ill. 2d at 360.) Certainly the jury could have found defendant's answer of "Yes—no, I mean no," to the point-blank question of whether there were drugs in the truck very damaging. Further, considering all of the facts and circumstances of the case, the jury could conclude that defendant knowingly brought cocaine into the State for the purpose of delivery. The critical facts are that defendant was "along for the ride" for no particular reason on a cross-country trip in a semitruck, that he had cocaine in his pocket, that the cocaine in the trailer had a purity level of 87% and was valued at approximately $43 million. Based on these facts, we find that there was sufficient evidence to support defendant's conviction for controlled substance trafficking.

We note that defendant argues in this issue that there was insufficient evidence to establish that he had possession or control over the cocaine in the truck. From our review of the elements of the offense of controlled substance trafficking, possession or control of the con-

trolled substance is not a required element. Therefore, inquiry into this area is unnecessary.

## II

Defendant next argues that he was denied a fair trial as a result of Sergeant Spahn's testimony. At trial Spahn testified over defendant's objections that the marking of the packages of cocaine with "Reina I" meant that it "was packaged or that it was sent from a [drug] family in South America." Defendant objected to this statement. Spahn also testified that the packages seized from Gutierrez' truck were similar to those seized in a 245-kilo transaction while Spahn was serving as Metropolitan Enforcement Group (MEG) agent in Chicago. These packages, similar to the ones seized in Chicago, "had numbers or some type of identifying feature on the packages so that the dealers would know exactly what they were selling." Spahn testified that certain "drug families" or "organizations" were known for having "a very high reputation of distributing very high quality narcotics, dealers would deal with these type of people because they knew what they were getting." Spahn stated that one of the "drug families" he was referring to "is the name that is on these packages."

Defendant contends that this line of testimony is reversible error because it amounts to profile testimony, which was not connected to defendant or the circumstances surrounding his arrest.

The State argues that Spahn's testimony was relevant because it provided the jury with additional circumstantial evidence indicating that defendant had knowledge of the presence of cocaine, and assisted the jury in understanding the nature of the evidence and its relationship to the offense.

While Spahn was not formally designated as an expert witness, the trial court required the State to lay a proper foundation as to the basis of his knowledge in narcotics trafficking and sales. This testimony is admissible in narcotics cases because while a jury may know what cocaine is, it is doubtful it would have any expertise in cocaine distribution. (*People v. Abdelmassih* (1991), 217 Ill. App. 3d 544, 548, 577 N.E.2d 861.) Spahn's testimony regarding his experience as a MEG agent in Chicago was necessary as a foundation to establish his credibility.

The trial court has the discretion to decide whether evidence is relevant and admissible, and that decision will not be reversed absent a clear abuse of discretion resulting in manifest prejudice to the defendant. (*People v. Hayes* (1990), 139 Ill. 2d 89, 130, 564 N.E.2d 803.) Evidence is admissible if it is relevant to an issue in dispute and

its probative value is not substantially outweighed by its prejudicial effect. (*People v. Gonzalez* (1991), 142 Ill. 2d 481, 487, 568 N.E.2d 864.) Evidence is considered relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Gonzalez*, 142 Ill. 2d at 487-88.

In the instant case, Spahn's testimony was directly related to the evidence because it tended to clarify the significance of the unexplained marking on the cocaine packages. While Spahn's testimony may have been detrimental to defendant's case, the trial court correctly held that his testimony did not unfairly prejudice the defendant. The trial court did not abuse its discretion in admitting the evidence.

## III

The final issue we must decide is whether certain statements made by the prosecutor during final argument deprived defendant of a fair trial. We find that they did.

Prior to defendant's jury trial, Gutierrez pled guilty to controlled substance trafficking. The State moved *in limine* to bar defense counsel from offering any evidence at trial of Gutierrez' guilty plea pursuant to *People v. Pryor* (1988), 170 Ill. App. 3d 262, 524 N.E.2d 700. A criminal defendant must be tried on evidence tending to show his guilt, not the guilt of another. (*Pryor*, 170 Ill. App. 3d at 270.) On this basis, the trial court granted the State's *in limine* motion and refused to permit Gutierrez' guilty plea to be brought before the jury.

The prosecutor then made the following statement in his closing argument,

> "Now, why—why would the driver consent to a search? Is it possible, ladies and gentlemen, that those boxes were put in his cab or—excuse me—in his trailer by someone else that he had no idea what was in there? Maybe he had some idea what was in there? Maybe he had some idea what was in there but didn't know the extent of the product inside those boxes. *I submit it's not only very possible but it is extremely probable and likely that the driver didn't know what was in those boxes.*" (Emphasis added.)

Defendant objected to these statements, but the trial court overruled the objection as being "a fair comment on the evidence." On appeal, defendant contends that these comments amount to outright lies and foul play on the part of the prosecutor because he was personally

aware of the fact that Gutierrez had earlier pled guilty to controlled substance trafficking.

The State responds that Gutierrez refused to testify at defendant's trial for either defendant or the State. In the absence of Gutierrez' testimony, the jury was left with the unanswered question of why Gutierrez would consent to the search. In this context, the State argues that the prosecutor's comments were supported by the evidence presented to the jury and, thus, were a proper commentary on the facts admitted into evidence.

The scope of argument made to the jury is within the sound discretion of the trial court, and every reasonable presumption must be indulged in that the trial court properly exercised this discretion. (*People v. Williams* (1990), 205 Ill. App. 3d 715, 726, 564 N.E.2d 597.) A prosecutor has wide latitude during closing argument to comment on the evidence presented, and the trial court's determination regarding the propriety of the closing argument will not be reversed on appeal absent a clear abuse of discretion. (*People v. White* (1989), 181 Ill. App. 3d 798, 806, 537 N.E.2d 1315.) If a prosecutor's argument is considered improper, it will not constitute reversible error unless the comments were a material factor in the defendant's conviction, or if the comments resulted in substantial prejudice to the accused. *Williams*, 205 Ill. App. 3d at 726.

It is a basic principle of our criminal justice system that the prosecutor owes a criminal defendant a duty of fairness throughout the trial, including his closing argument. (*People v. McCollum* (1992), 239 Ill. App. 3d 593, 598, 607 N.E.2d 240.) This duty imposes on the prosecutor an ethical obligation to delete prejudicial and improper matters from closing argument. (*McCollum*, 239 Ill. App. 3d at 598.) A failure to do so constitutes a breach of the prosecutor's duty.

As the Ninth Circuit Court of Appeals recently stated:

> "Prosecutors are subject to constraints and responsibilities that don't apply to other lawyers. [Citation.] While lawyers representing private parties may—indeed, must—do everything ethically permissible to advance their clients' interests, lawyers representing the government in criminal cases serve truth and justice first. The prosecutor's job isn't just to win, but to win fairly, staying well within the rules. [Citations.] As Justice Douglas once warned, '[t]he function of the prosecutor under the Federal Constitution is not to tack as many skins of victims as possible to the wall. His function is to vindicate the right of people as expressed in the laws and give those accused of crime a fair trial.' *Donnelly v. De Christoforo*, 416 U.S. 637, 648-49

(1974) (Douglas, J., dissenting.)" *United States v. Kojayan* (3d Cir. 1993), 8 F.3d 1315.

See also *McCollum*, 239 Ill. App. 3d at 598.

■■ In this case, the trial court's ruling allowing the prosecutor's comments to stand amounted to an abuse of discretion. While it was not error for the trial court to prevent any mention of Gutierrez' guilty plea, the court abused its discretion by allowing the State to put forth a closing argument designed to encourage the jury to draw inferences based on a misrepresentation of fact known to the prosecution. The prosecutor breached the duty of fairness that he owed to defendant and, as a result, deprived defendant his right to a fair trial. In short, when a prosecutor's argument is based on inferences or facts known to be deliberate misrepresentations, such action will not be tolerated.

For the foregoing reasons, the circuit court's judgment convicting defendant of controlled substance trafficking is reversed and the cause remanded to that court for a new trial consistent with this opinion.

Reversed and remanded.

BARRY and LYTTON, JJ., concur.