Angelo RIVERA, Petitioner–Appellant,

v.

DIRECTOR, DEPARTMENT OF CORRECTIONS, STATE OF ILLINOIS, Respondent–Appellee.

No. 90–1439.

United States Court of Appeals, Seventh Circuit.

Argued Aug. 8, 1990.

Decided Sept. 27, 1990.

James H. Reddy, Office of the Public Defender of Cook County, Chicago, Ill., for petitioner-appellant.

Richard S. London, Asst. Atty. Gen., Office of the Atty. Gen., Chicago, Ill., for respondent-appellee.

Before POSNER and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

POSNER, Circuit Judge.

After being convicted of murder following a bench trial and sentenced to sixty years in prison, and after exhausting his state remedies, Angelo Rivera brought this action for federal habeas corpus, and having been turned down by the district judge appeals. There is only one issue, whether the refusal to allow into evidence at Rivera's murder trial the confession of his co-defendant (who was tried separately), which exculpated Rivera, denied Rivera due process of law.

Early one morning the body of Zelia Simmons was found in an alley in Chicago. She had been beaten to death. A trail of blood led to the residence of Richard Norman. The police arrested him, and he confessed that night. The confession, which stated that he alone had beaten her, was placed in evidence against him at his trial, and he was convicted and sentenced to spend the rest of his life in prison. Jeffrey Meger had been with Norman, Zelia Simmons, and Angelo Rivera, the appellant in this case, in a basement room of Norman's building, where the beating took place. Meger testified that he saw Rivera hit Simmons with a hammer. This testimony was consistent with a statement that Meger had given the police almost a week after the murder. The earliest statements that Meger had given had not, it is true, implicated Rivera, but he explained that this was because Rivera had threatened him and it was only after Rivera had been taken into custody that he dared to point the finger at him. Meger's testimony was the only evidence that Rivera had participated in the murder. Rivera tried to introduce Norman's confession at his trial, because it exculpated him, but this was refused on the ground that under Illinois law the availability of the out-of-court declarant (Norman) for cross-examination is a *sine qua non* of the admission of hearsay evidence. Norman was unavailable because he intended, if called as a witness in Rivera's trial, to plead his right not to be forced to incriminate himself. *United States v. Garcia*, 897 F.2d 1413, 1421 (7th Cir.1990).

Without the confession, it was Rivera's word against Meger's. The confession thus was vital evidence. The Supreme Court held in *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973), that "the hearsay rule may not be applied mechanistically to defeat the ends of justice." The due process clause entitles a criminal defendant to demand, irrespective of the state's hearsay rule, a trial "adequate to separate the guilty from the innocent." *Gomez v. Greer*, 896 F.2d 252, 254 (7th Cir.1990). So if the defendant tenders vital evidence the judge cannot refuse to admit it without giving a better reason than that it is hear-

say. No better reason was given in this case. The state court judge (who apparently never read the confession) gave as the reason for excluding it that Norman would not be available to be cross-examined in Rivera's trial. But he was unavailable in the same sense in his own trial, in which the state introduced the confession in evidence against him. He could have testified contrary to the confession, but by taking the stand to do this he would have been opening himself to questioning that might have incriminated him—the very prospect that made him unavailable in this case. The admission of the confession at Norman's own trial did not trip over the hearsay rule, but this was not because he was available to testify at that trial. The confession, insofar as it implicated him, was within the familiar exception to the hearsay rule for statements against penal interest. That exception was inapplicable to the use of Norman's confession in Rivera's trial, since exculpating Rivera was not against— not directly against, in any event—Norman's penal interest. In addition, in Norman's trial but of course not in Rivera's, Norman's confession was the admission of a party opponent, and therefore admissible in evidence irrespective of the hearsay rule. Fed.R.Evid. 801(d)(2); Ill.R.Evid. 15:34.

■ At argument the state gave a different reason for excluding Norman's confession from the Rivera trial—that it was contradicted by Meger's testimony and therefore was unreliable. There is no "therefore." Rivera's whole purpose in wanting to place the confession in evidence was to challenge the reliability of Meger's testimony. It begs the question to *assume* that Meger's testimony was reliable, implying that *any* contrary evidence would be unreliable. · The state gave another silly reason: the confession had been made to the police rather than to a close friend, as in *Chambers*. The Supreme Court does not sit to decide cases that will control only cases having identical facts. The confession was reliable enough to be used to put Norman away for the rest of his life, and no reason is suggested why, if only it had been made to a close friend—but not otherwise—it would be reliable evidence of Riv-

era's innocence as well. The state even intimates—short-sightedly and opportunistically, as it seems to us—that the confession was unreliable because involuntary, Norman having been under the influence of drugs and alcohol when he was interrogated. If his confession was involuntary, Norman is entitled to a new trial at which the confession would be inadmissible. We are certain the state did not mean to concede as much.

■ The real difference, so far as analysis of hearsay is concerned, between the use of the confession in these two cases, Norman's and Rivera's, is, as already suggested, that in Norman's case it was used to inculpate him and hence it was a statement against penal interest, an established (albeit relatively recently established) exception to the hearsay rule (see Fed.R.Evid. 804(b)(3) and Note of Advisory Committee thereto; *Donnelly v. United States*, 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820 (1913)), while in this case it was used to exculpate Rivera, and there is no established exception for exculpatory statements, *Gomez v. Greer, supra*, 896 F.2d at 254, even when the statement appears in a confession. *United States v. Lilley*, 581 F.2d 182, 188 (8th Cir.1978); *United States v. Barrett*, 539 F.2d 244, 252 (1st Cir.1976). In this case, however, the state's lawyer expressly declined to argue that the inculpatory portions of Norman's confession were more reliable than the exculpatory portions. Perhaps he was right to do this, in the circumstances. There is no suggestion that Norman had any motive to exculpate Rivera—that he (as distinct from Meger) had been threatened by, or was otherwise in fear of, Rivera, or on the other hand that he might be a relative or close friend of Rivera, motivated by ties of blood or friendship to help him. There is also no suggestion that Norman might simply have failed to notice that Rivera was there with him beating the helpless woman to death.

We attach no significance to the fact that, by disclaiming accomplices, Norman necessarily placed himself at the scene of the crime—an incriminating thing to do, granted, but the *incremental* incriminating

effect of the comment about accomplices was nil, given that Norman had already admitted his guilt. But although it was not against Norman's penal interest in a strict sense, the failure to inculpate another person in the brutal beating was hardly calculated to incite sympathy for Norman. His incentive, one might think, was to inculpate as many other persons as possible and minimize his own involvement. Even the exculpatory part of the confession, therefore, was against the declarant's penal interest in a loose but perhaps adequate sense. Cf. *id.* at 252–53; *United States v. Thomas,* 571 F.2d 285, 288 (5th Cir.1978); *United States v. Lopez,* 777 F.2d 543, 554 (10th Cir.1985). Against this it might be argued that the more numerous the attackers, the more savage and horrible the crime, so Norman's incentive was to conceal the existence of accomplices after all. But the state does not argue this. On the state's account, the exclusion of Norman's confession from Rivera's trial was arbitrary, because the state has offered no plausible reason for believing that the exculpatory portion of the confession was so unreliable as to justify denying Rivera the right to introduce the only evidence of his innocence that he had.

*United States v. Garris,* 616 F.2d 626, 630 (2d Cir.1980), goes further than the cases we have cited and suggests that even a perfectly neutral statement, provided it is an integral part of a statement against the declarant's interest, is admissible under the federal hearsay rule. We need not decide whether we agree, which may in turn depend on what meaning "integral" bears in this context; and we certainly do not suggest that every exception in the federal hearsay rule must be read into the due process clause of the Fourteenth Amendment. But we have said enough to make clear that the exclusion of Norman's statement exculpating Rivera cannot be justified merely by shouting "hearsay!"

We have said in previous cases and will continue saying until the lesson sinks in that the issues in habeas corpus as in other civil cases are framed by the parties, so that if the state waives its best argu-

ments it must live with the consequences. *Wilson v. O'Leary,* 895 F.2d 378, 384 (7th Cir.1990); see also *Thomas v. Indiana,* 910 F.2d 1413, 1415 (7th Cir.1990). Maybe the state has good arguments to show that the exculpatory portion of Norman's confession really is unreliable, but on the record as it stands and the arguments made (and not made) by the state in the three-page argument portion of its brief, the only conclusion possible is that vital evidence of Rivera's innocence was excluded by the mechanical application of the hearsay rule. Unless and until the Supreme Court abandons *Chambers v. Mississippi,* this conclusion entitles Rivera to a new trial. The judgment is therefore reversed with instructions to order Rivera released unless the state retries him within 180 days.

R EVERSED W ITH D IRECTIONS.