Tony Hanif LEE, Petitioner–Appellant,

v.

Gary R. McCAUGHTRY, Warden, Waupun Correctional Institution, Respondent–Appellee.

No. 90–2514.

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1991.

Decided May 24, 1991.

Kenneth N. Flaxman, Chicago, Ill., for petitioner-appellant.

Sharon Ruhly, Asst. Atty. Gen., Office of the Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for respondent-appellee.

Before POSNER, FLAUM and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

*Chambers v. Mississippi,* 410 U.S. 284, 298–303, 93 S.Ct. 1038, 1047–50, 35 L.Ed.2d 297 (1973), holds that states may not use the hearsay rule to deprive defendants in criminal cases of reliable and important evidence—in *Chambers,* multiple confessions of another person to the murder for which Chambers was on trial. McDonald told three associates shortly after the shooting that he fired the gun, and he gave a sworn confession to attorneys representing Chambers. The trial court excluded the statements to the three associates and, by invoking a "voucher" rule, made it impossible for Chambers to pierce McDonald's repudiation of his confession to the attorneys. The Supreme Court held that the state deprived Chambers of due process of law by using archaic rules to foreclose a defense that could have been constructed from reliable evidence. How reliable must hearsay be to fit the *Chambers* approach? We concluded in *Rivera v. Director, Department of Corrections,* 915 F.2d 280, 282 (7th Cir.1990), that if a confession is sturdy enough for the state to use in its own case—if it is the sort of evidence that prosecutors regularly use *against* defendants—then defendants are entitled to use it for their own purposes.

Tony Hanif Lee seeks the benefit of *Chambers.* Wisconsin charged Lee with participation in the murder of Booker Troy Sparks in January 1985, which made Lee accountable as a principal. An earlier opinion, 892 F.2d 1318, 1320–23 (1990), lays out the facts, so we can be brief. The police followed a set of footprints in the snow from Sparks' body to a house. They found Lee, his pants wet from melting snow. Lee initially offered lame excuses (he explained the moisture by telling the police that he had been walking his dog, yet no paw prints could be found in the snow). Later Lee confessed to (limited) participation in the deed—an admission he took back before trial. A second set of footprints appeared in the snow near the body. The prosecutor believed that Donald Williams, Lee's brother-in-law, left these prints. Williams went into hiding. Lee alone stood trial and was convicted; the prosecutor depicted Lee as the triggerman but conceded that Lee's involvement may have been restricted to disposing of the gun after Williams committed the murder in Lee's presence.

During the trial Lee sought to introduce testimony from Greg Williams, his brother, to show that Donald Williams had absolved Lee of participation. The judge excluded this hearsay on the ground that it was not corroborated. Wis.Stat. § 908.045(4). Lee's lawyer made this offer of proof:

> [Greg Williams] will say several weeks ago he had a conversation with Donald Williams; and while speaking to Donald Williams, Donald Williams admitted he was the one that shot the deceased; that the deceased had been engaged in a marijuana transaction; that an argument ensued over a previous drug transaction; that Donald Williams shot and killed the man; and that Tony Lee was not involved in the shooting nor involved in the drug transaction.

"Several weeks ago" meant several weeks before trial. The trial occurred in January 1986, approximately one year after the murder. Donald Williams was then a fugitive; indeed, for all we know he is still on the lam. Lee sought to corroborate Donald Williams' supposed statement by pointing to a packet of marijuana in Sparks' possession at the time of his death; the packet had been sealed in a distinctive way, implying Donald Williams as the source. As the trial judge observed, however, a Sparks–

Williams connection does not corroborate the claim that Lee took no part in the crime.

Mississippi sought to debunk Chambers' argument with a parade of horribles, the worst of which was the specter of a "confession" by a fugitive. Since fugitives do not expect to be caught, the belief that people do not falsely inculpate themselves does not provide a foundation for deeming the statement reliable. Moreover, the state could not lay its hands on the declarant to test the reliability of the confession in other ways. The Supreme Court responded to this specter by assuring its audience that the statement by a fugitive was a different case, not covered by the rule being established. 410 U.S. at 301–02 n. 21, 93 S.Ct. at 1049 n. 21. Lee presents for decision what was in *Chambers* only a hypothetical. It is indeed a different case, for the statement is both less probative and harder to evaluate at trial. One could say that the circumstances undermining the reliability of a fugitive's statement could be presented to the jury, but the same could be said about all hearsay. *Chambers* did not do away with the hearsay rule. The Supreme Court contemplated that the judge would be a gatekeeper, that unreliable statements could be excluded. The Court's objection was to the mechanical nature of Mississippi's rule, which could block defendants from using even strong evidence of innocence. It did not abolish the hearsay rule on constitutional grounds.

Donald Williams' statements were not reliable enough to come within *Chambers.* Uncorroborated assertions, well after the events and conveniently close to trial, relayed to court through the defendant's brother from a fugitive already charged with the same offense and anticipating no greater personal risk from the statements, are the opposite poll from the statements involved in *Chambers.*

As a consequence of this conclusion, we need not consider whether *Chambers* implies independent federal review of reliability. The Court's objection was to the mechanical invocation of the hearsay rule, to the state's unwillingness to show *any* con-

cern for the reliability of its fact-finding process. *Chambers* means that states must revise their hearsay rules to admit reliable declarations against penal interest. Once a state has brought its rules of evidence into line with constitutional norms, there is little point in case-by-case federal review of evidentiary rulings. Collateral review is not just a rerun of the direct appeal. The federal interest lies in ensuring that states conduct their criminal process in a way likely to separate the guilty from the innocent, *Gomez v. Greer,* 896 F.2d 252, 254 (7th Cir.1990), not in second-guessing every evidentiary ruling. Recent cases remind us of the difference between direct and collateral review. E.g., *McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Teague v. Lane,* 489 U.S. 288, 308–09, 109 S.Ct. 1060, 1073–74, 103 L.Ed.2d 334 (1989); *Kuhlmann v. Wilson,* 477 U.S. 436, 452–55, 106 S.Ct. 2616, 2626–27, 91 L.Ed.2d 364 (1986); *United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). Cf. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Duckworth v. Eagan,* 492 U.S. 195, 207–13, 109 S.Ct. 2875, 2882–85, 106 L.Ed.2d 166 (1989) (O'Connor, J., concurring). Wisconsin applies the *Chambers* standard as part of its own law of evidence. *State v. Anderson,* 141 Wis.2d 653, 416 N.W.2d 276 (1987); *State v. Sharlow,* 110 Wis.2d 226, 327 N.W.2d 692 (1983). The state's court of appeals examined the reliability of Donald Williams' statement before sustaining the trial judge's decision to exclude it. After duplicating that inquiry we have reached the same conclusion. Whether *Chambers* requires this procedure is a question for another day.

A𝖥𝖥𝖨𝖱𝖬𝖤𝖣.