THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM CARSON, Defendant-Appellant.

First District (3rd Division)   No. 1—88—1760

Opinion filed November 12, 1992.

458

Rita A. Fry, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Carol L. Gaines, and Joseph W. Colaianne, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

William Carson was convicted of the murder of Terrence Jones and sentenced to 28 years' imprisonment.

On appeal, defendant raises issues as to whether: (1) the trial court erred in refusing to allow defense counsel to admit into evidence codefendants' statements which did not incriminate defendant in the murder; (2) the trial court erred in allowing a police officer's testimony on gang activity that occurred prior to and during the period in which the victim was killed; (3) the prosecutor's comments were so inflammatory, prejudicial and unsupported by evidence as to cumulatively deny defendant a fair trial; and (4) the trial court erred in failing to inform jurors during *voir dire* of the State's burden of proof and the presumption of innocence.

We affirm defendant's conviction.

At approximately 9:30 p.m. on May 20, 1986, 12-year-old April Murdock and 16-year-old Terrence Jones played outside of the high-rise apartment buildings at the Cabrini-Green housing project where they lived. April heard a shot and felt a bullet pass by her ear. She and the victim ran toward the building at 1159 North Cleveland Avenue and paused near the outside stairs. April looked up at the 534 West Division Street building to determine the source of the shots. She testified that her attention was focused on that particular building because shots were often fired from there. She observed a window on the third floor from the top of the building with orange curtains and two people with dark skin looking out of the window. April testified that one person wore a white hat and the other held a rifle with a scope attached, and the rifle was pointed at the 1159 North Cleveland Avenue building where April and the victim stood. April ran into the 1159 North Cleveland Avenue building and within moments heard three or four more shots fired, one of which hit the victim, who fell to the ground.

Detective Thomas Blomstrand testified that April showed him and his partner, William Baldree, which window had the orange curtains at 534 West Division Street. Outside of apartment 1402, the officers noticed a gang symbol for the Black Gangster Disciples with the word "Mickey" written across it. Leslie Mickey, codefendant Robert Mick-

ey's mother, allowed the officers to look into her son's bedroom, where orange curtains hung. The officers noticed that from the window there was a clear line of sight to the area where the victim had been shot. Detective Blomstrand testified that he recovered a white cap from the apartment of David Carson, the defendant's brother.

Officer De Rosa testified that on June 12, 1986, three weeks after the murder of Terrence Jones, he and his partner investigated a report of a man with a shotgun in the vicinity of Larrabee and Division Streets, which is where the 534 West Division Street building is located. Officer De Rosa observed defendant standing in the lobby of the building at 534 West Division Street holding a red and black rifle case, while another man stood next to defendant holding a sawed-off shotgun at his side. The two suspects fled into the stairwell and defendant was later apprehended on the 14th floor of the 534 West Division Street building. Inside the rifle case, the officers found a loaded .22-caliber Remington Speedmaster rifle and numerous rounds of ammunition.

Officer Chenow testified that he performed tests on the .22-caliber rifle and found that although he could not say conclusively that it was used to kill the victim, it could not be ruled out. Thereafter, defendant was advised of his constitutional rights and subsequently gave a detailed account of the murder to Detective Baldree, implicating himself in the crime.

Defendant also made a court-reported statement to Assistant State's Attorney Michael Gerber on June 13, 1986. In the statement, he recounts that at approximately 9:30 p.m. on May 20, 1986, he was in Robert Mickey's bedroom in apartment 1402 at 534 West Division Street. Defendant's brother, David Carson, and Robert Mickey were also there. Defendant stated that Robert Mickey fired a shot from his window toward the building at 1159 North Cleveland Avenue in the direction of the victim. Defendant recalled that after the first shot, Mickey started shaking and could not hold the gun steady. Defendant, who admitted that he was wearing a white painter's cap at the time, wrapped his arms around Mickey in order to brace him, and another shot was fired toward the victim. Defendant further admitted that the gun recovered from him on June 12, 1986, was the same gun used in the murder. Defendant stated that he understood the victim to be a member of a rival gang, the Vice Lords, which was "on bad terms" with defendant and Mickey's gang, the Black Gangster Disciples, and that the victim had previously shot at Mickey.

Defendant first argues that the trial court erred when it refused to allow into evidence the statements of codefendants David Carson

and Robert Mickey because those statements were exculpatory as to defendant.

Defense counsel sought to introduce the statements of the codefendants because of the similarity of the two statements and the fact that both fail to state that defendant had any role in the victim's murder. The absence of such a nexus could cast serious doubt in the minds of the jurors that defendant was guilty of the charged offense or that his confession was voluntary.

Extrajudicial declarations may be admissible under the statements-against-penal-interest exception to the hearsay rule. (*People v. House* (1990), 141 Ill. 2d 323, 566 N.E.2d 259; *People v. Bowel* (1986), 111 Ill. 2d 58, 66, 488 N.E.2d 995.) *Bowel* cites *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038, holding that the determination to be made as to the admissibility of such a declaration is whether it was made under circumstances that provide "considerable assurance" of its reliability by objective indicia of trustworthiness. *Bowel*, 111 Ill. 2d at 67.

The criteria for trustworthiness set out in *Chambers* and adopted in *Bowel* are: (1) the statement was made spontaneously to a close acquaintance shortly after the crime occurred; (2) the statement was corroborated by other evidence; (3) the statement was self-incriminating and against the declarant's interest; and (4) there was adequate opportunity for cross-examination of the declarant. The existence of all four factors is not required for a statement to be admitted, but there must exist other considerable assurances of the statement's trustworthiness. *House*, 141 Ill. 2d at 390; *People v. Nally* (1991), 216 Ill. App. 3d 742, 768-69, 575 N.E.2d 1341.

In the present case, the trial court determined that the statements, *inter alia*, did not meet the first and fourth *Chambers* indicia and thus were inadmissible hearsay which was not trustworthy because they were not made to a close acquaintance shortly after the crime and the codefendants were unavailable for cross-examination.

Defendant relies on *People v. Kokoraleis* (1986), 149 Ill. App. 3d 1000, 501 N.E.2d 207, a murder and rape case, which found that the statements of two codefendants were sufficiently trustworthy where they were made to law enforcement personnel; corroborated by the physical and testimonial evidence presented at trial; incriminating and against the codefendants' penal interests; and inconsistent with defendant's confession, upon which the State's prosecution was grounded. *Kokoraleis*, 149 Ill. App. 3d at 1020-26.

Defendant maintains that *Kokoraleis* is controlling since, as in the case at bar, the codefendants in *Kokoraleis* made their statements to

police somewhat remote from the date of occurrence rather than to a close acquaintance. The court found such statements were more likely than not trustworthy since the statements would intensify police efforts to prosecute the declarants. *Kokoraleis,* 149 Ill. App. 3d at 1020-21.

However, although the trial court in this case acknowledged and considered *Kokoraleis, Chambers* and other cases relevant to this issue, it also had before it other evidence suggesting defendant's culpability, such as the fact that the defendant was arrested in the location of the shooting with a rifle and bullets which later were shown to have characteristics similar to those used in the murder.

The trial court also noted that when the codefendants gave their statements, the identity of defendant and his participation in the murder were not yet known, allowing a reasonable inference that because defendant is the brother of codefendant David Carson, and because evidence reveals that all three defendants were members of the same gang, the codefendants might not implicate defendant in the murder at the time of their arrests.

The trial court placed significant weight upon the fact that the codefendants were not available for cross-examination. Just as *Bowel* does not require all four of its suggested criteria be present to find a statement trustworthy, the opposite is also true: that simply because one or more of the four indicia are present does not make a statement trustworthy. (*People v. Villegas* (1991), 222 Ill. App. 3d 546, 551, 584 N.E.2d 248; *Nally,* 216 Ill. App. 3d at 770; *People v. Hoffstetter* (1990), 203 Ill. App. 3d 755, 774, 560 N.E.2d 1349.) It is for the trial court to determine by the totality of the circumstances whether it considers the extrajudicial statement to be trustworthy, and its determination will not be reversed absent an abuse of discretion. *People v. Sanchez* (1989), 131 Ill. 2d 417, 424, 546 N.E.2d 574; *Villegas,* 222 Ill. App. 3d at 551.

■ The trial court in this case was explicit in its findings that it had reviewed the statements, police reports and all other relevant evidence, and that, under the totality of the circumstances, it found the statements untrustworthy. Upon examination of the record, we find that the trial court did not abuse its discretion in making that determination.

Defendant next argues that the trial court erred in allowing Officer Davis to testify regarding gangs and gang wars in the area of the shooting relating to the time period in which the victim was murdered. The State argues that the testimony was introduced to show

defendant's motive for the shooting: a common plan to kill a rival gang member.

Motive is not an essential element of murder and the State has no obligation to prove it in order to sustain a murder conviction; however, any evidence which tends to show that an accused had a motive for killing the deceased is relevant because it enhances the probability that the accused did kill the deceased. *People v. Easley* (1992), 148 Ill. 2d 281, 326, 592 N.E.2d 1036; *People v. Smith* (1990), 141 Ill. 2d 40, 56, 565 N.E.2d 900.

For such evidence to be considered competent, it must, "at least to a slight degree, tend to establish the existence of the motive relied upon or alleged." (*Easley*, 148 Ill. 2d at 326; *Smith*, 141 Ill. 2d at 56.) Thus, when the State undertakes to prove facts which it asserts constitute a motive for the crime charged, it must show that the accused was aware of those facts. *Easley*, 148 Ill. 2d at 326-27.

Defendant argues that the prosecutor's closing remarks demonstrate that the officer's testimony was not used simply to allow jurors to draw an inference as to the motive, but to prejudice defendant. The prosecutor referred to gang wars, including a statement that defendant was a member of a "sniper gang."

Defendant directs us to *People v. Cruz* (1988), 164 Ill. App. 3d 802, 518 N.E.2d 320, in which the trial court erred by admitting an inflammatory documentary videotape detailing gang activities in the vicinity of the murder, in an effort to impeach defendant's testimony denying gang membership. The State was unable to demonstrate that defendant's motive was gang-related since none of the information in the video established it and the tape was shot at least three months prior to the murder.

Although public prejudice may exist against street gangs, gang-related evidence will not necessarily be excluded if it is otherwise relevant and admissible. (*People v. Gonzalez* (1991), 142 Ill. 2d 481, 489, 568 N.E.2d 864; *Smith*, 141 Ill. 2d at 58.) An accused may not insulate the jury from his gang membership where it is relevant to a determination of the case, simply because prejudice attaches to that revelation. *People v. Nichols* (1992), 235 Ill. App. 3d 499, 506-07; *People v. Rivera* (1986), 145 Ill. App. 3d 609, 618, 495 N.E.2d 1088.

In the present case, Officer Davis testified that he had spent eight years accumulating information on gangs and monitoring gang-related activity surrounding the Cabrini-Green housing project where the victim was shot. His testimony related only gang activity at the time of the shooting in question, May 1986, and the three gangs that were

mentioned in the course of the evidence: the Black Gangster Disciples, the Vice Lords and the Cobra Stones.

Officer Davis testified that at the time of the incident, the Black Gangster Disciples were feuding with the rival Vice Lords, who were allied with the Cobra Stones, testimony which corroborated defendant's own statement. The officer stated that he knew firsthand that all three defendants were members of the Black Gangster Disciples and that the victim was a member of the Cobra Stones.

Davis identified the gangs' "turf" or territory within Cabrini-Green: the building at 534 West Division Street, where the shots were fired from, is Black Gangster Disciple turf, and the building at 1159 North Cleveland Avenue, where the victim was shot, is Cobra Stones territory. Officer Davis further testified that outside of apartment 1402 at 534 West Division Street was drawn a six-point black star, the gang symbol for the Black Gangster Disciples, with the word "Mickey" written across it; and on the victim's body was a tattoo of a cobra snake with a king superimposed, the symbol for the Cobra Stones.

Davis' testimony tended to explain the implications of gang involvement originally provided in defendant's statement, which implied gang-related motives for the shooting.

▮▮ The trial court determined that the probative value of the information outweighed the possible prejudice to defendant, and we can find no abuse of discretion in that ruling. Evidence was produced as to the gang affiliations of the defendants and the victim; that the two gangs were rivals "on bad terms"; and that Mickey told defendant that the victim had earlier shot at Mickey. The testimony was clearly limited to the gang situation at the time and place of the shooting and related only to the persons involved in the shooting.

We find that, according to *Easley*, the gang-related testimony presented by Officer Davis did tend to establish a motive of gang rivalry, certainly more than to a "slight degree," and defendant was aware of the facts upon which the State based its argument for the motive. (*Easley*, 148 Ill. 2d at 326.) The evidence of gang membership may have provided the jurors with an explanation for the "seemingly inexplicable attack." *People v. Ayala* (1990), 208 Ill. App. 3d 586, 592, 567 N.E.2d 450.

Further support for our finding comes in the recently decided supreme court opinion of *People v. Lucas* (1992), 151 Ill. 2d 461, which elaborated on *Easley*. In that case, defendant was convicted of killing a superintendent at Pontiac Correctional Center in retaliation for the death of a fellow Black Gangster Disciple gang member. The court

found evidence of gang membership admissible where the defendant conceded he was a gang member and there was evidence that he was aware that there were plans to retaliate against the prison administration, defendant having attended a meeting of gang members. *Lucas*, 151 Ill. 2d at 479-80.

Circumstances in the case at bar are similar in that defendant admitted he was a member of the Black Gangster Disciples and that Mickey had told him, prior to the shooting, that the victim, a member of the rival gang, Cobra Stones, had earlier shot at Mickey. When Mickey took the gun several minutes later, pointed it and shot at Terrence Jones below, defendant was aware that Mickey intended to retaliate against Jones, just as the defendant in *Lucas* was aware that retaliation was contemplated.

Further, while defendant argued that the State made several inflammatory references to gangs during his opening and closing argument, we find that defendant failed to object to any of those references or raise them in his post-trial motion. Therefore, as to those statements, the issue is waived. *People v. Reid* (1990), 136 Ill. 2d 27, 38, 554 N.E.2d 174; *People v. Enoch* (1988), 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124.

We next consider defendant's claim that the State in closing argument made inflammatory and prejudicial statements and statements unsupported by the evidence.

Defendant argues that the cumulative effect of the prosecution's statements that follow requires reversal of the conviction and a new trial: (1) the State's comment that the .22-caliber ammunition found in the rifle case when defendant was arrested was "the same ammunition used to kill Terrence Jones"; (2) the State's comment that the defense never asked Leslie Mickey who was in her son's room on the night of the murder, although the prosecutor was aware of Mrs. Mickey's retraction of her statement that she was in the apartment with her son that night; (3) the State's question to the jury if "anywhere in the evidence did you hear that this hat that was floating around here belongs to David Carson"; (4) the State's argument that defendant was "teaching" Mickey how to shoot when the victim was murdered; and (5) the State's prediction that, at the time defendant was arrested with a gun in the same location as the murder, defendant perhaps was planning on doing more killing.

■ The defendant has failed to properly preserve these issues for review by objecting at trial and raising the specific issue in a post-trial motion. (*Reid*, 136 Ill. 2d at 38; *Enoch*, 122 Ill. 2d at 186-87.) However, to ensure that defendant receives a thorough and fair re-

view, we shall address these issues under the plain error doctrine to determine if doubt is raised as to the validity of the jury's verdict. *People v. Mullen* (1990), 141 Ill. 2d 394, 401, 566 N.E.2d 222.

The prosecutor is allowed considerable latitude in closing argument as long as the comments are based on the evidence or reasonable inferences therefrom. (*People v. Young* (1990), 206 Ill. App. 3d 789, 812, 564 N.E.2d 1254.) Improper prosecutorial remarks in closing argument do not warrant reversal unless the argument as a whole was so seriously prejudicial that it deprived defendant of a fair trial. *People v. Cox* (1990), 197 Ill. App. 3d 1028, 1041, 557 N.E.2d 288.

We read the State's comment regarding the ammunition which defendant was found to be carrying when arrested as referring to the caliber of the ammunition, that it was the same caliber as the bullets used to kill Terrence Jones, and any prejudice to come of that statement is so slight that it did not deny defendant a fair trial. As for the State's comment on Mrs. Mickey's testimony, while the State was aware that Mrs. Mickey had retracted her statement that she was at home with her son the night of the shooting, such statement by itself did not seriously prejudice defendant.

We do not find the State's comments in its rebuttal on the hat allegedly worn by defendant to be prejudicial. Given the wide latitude allowed a prosecutor, the State could properly comment that there was no evidence presented that David Carson owned the hat. Defense counsel in closing referred to the hat as David Carson's, so the prosecutor's question in rebuttal as to the evidence of ownership of the hat was properly invited by the defense.

Likewise, we find no error in the State's comment that defendant was Robert Mickey's "teacher." Defendant's own statement clearly lends such a description to the incident: because Mickey was shaking badly, defendant leaned over and braced Mickey's body with his to steady him, and placed his hands on Mickey's hands while the shots were fired.

While it was improper for the State to comment that, at the time of his arrest, defendant was "going to do some more killing," the trial court sustained defendant's objection and later admonished the jury that such comments were to be disregarded.

*Mullen*, relied upon by defendant, is not analogous. There the prosecutor erroneously made remarks in his rebuttal which the trial court had specifically forbidden, and argued critical facts not supported by the record in a closely balanced case. (*Mullen*, 141 Ill. 2d at 404-05.) Here, along with defendant's confession, defendant was arrested at the scene of the crime three weeks later carrying a rifle and

ammunition, the same type which was used to kill the victim. We cannot say that the prosecutor's comment as to where defendant was going at the time of his arrest was so prejudicial as to raise doubt as to the validity of the jury's verdict. (*Mullen*, 141 Ill. 2d at 402.) Further, the trial court's admonishment to the jury that opening and closing arguments are not evidence additionally aided in preventing prejudice against defendant.

Defendant next argues that it was improper for the State to remark that Assistant State's Attorney Michael Gerber, a witness to defendant's confession, would not jeopardize his law license to falsely testify against defendant.

While counsel may not argue that the testimony of a witness is more credible merely because of his profession (*People v. Ford* (1983), 113 Ill. App. 3d 659, 447 N.E.2d 564), where the complained-of remarks are in response to opposing counsel's own statements contradicting the credibility of a witness, there is no prejudicial error. *Young*, 206 Ill. App. 3d at 812.

■ Although such an observation is ill-advised, the prosecutor's comments were made in rebuttal to defense counsel's inferences that because Detective Baldree and Assistant State's Attorney Gerber were at times alone with defendant, defendant was coerced into making his statement. While defendant denies this was the inference intended, such a comment coincides with defendant's theory that his statement was coerced, and the witnesses' credibility has been challenged.

Defendant also contends that the prosecutor's comments in closing argument violated the trial court's order prohibiting the State from arguing that shots had been fired from the Mickey apartment on occasions prior to the shooting at issue. Defendant cites the State's remarks as error:

> "And at the time that the first shot is fired out the window, April Murdock runs to the entrance of a breezeway to take cover. And Terrence Jones also goes by the breezeway. But he doesn't take cover enough. And April Murdock looks up at the orange curtains and looks at the building at 534 West Division. And the reason she looks up there is because there has been shooting from there before."

■ The record demonstrates that the trial court's intention was to specifically prohibit the State from arguing that witnesses had seen shots fired from the Carson window on prior occasions, but expressly allowed the State to argue that shots had been fired from the building previously.

The State's comment did not violate the court's limitation on the evidence, nor did it substantially prejudice defendant's right to a fair trial. The jury had already heard April Murdock's testimony that shots had been fired from the building previously, and the State properly commented on that testimony. We disagree with defendant that the comment unequivocally means that April had seen shots from the Carson window. We find that the phrase "she looks up there" refers to the building in general, and not the window in question. Further, the trial judge admonished the jury that closing arguments were not evidence.

We determine that defendant's alleged errors do not amount to prejudicial error, either alone or cumulatively, since they raise no doubt as to the validity of the jury's verdict. *Mullen,* 141 Ill. 2d at 402.

Defendant finally contends that the trial court erred because it failed to *voir dire* all the jurors on the State's burden of proof and the presumption of innocence.

Jurors in a criminal case must be aware that a defendant is presumed innocent, that he is not required to present evidence, that the State must prove him guilty beyond a reasonable doubt and that the defendant's failure to testify cannot be used against him. (*People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062.) In *People v. Emerson* (1987), 122 Ill. 2d 411, 425, 522 N.E.2d 1109, the supreme court stated that where a trial court explains to the venire as a whole, prior to *voir dire* questioning, that a defendant is presumed innocent, need not present evidence and must be proven guilty beyond a reasonable doubt, it may decline to ask those specific questions of jurors, even when a defendant so requests.

The *Emerson* court observed that *Zehr* did not prescribe a precise formula for trial judges to use in ascertaining jurors' prejudices or attitudes, and that the trial judge's general admonition coupled with his later discussion of presumption of innocence satisfied *Zehr*. *Emerson,* 122 Ill. 2d at 426-27.

In the present case, the trial court advised the jury of the *Zehr* standards on at least four occasions. At the start of *voir dire,* the trial court explained the trial process and the fact that a defendant is presumed innocent until the State proves him guilty beyond a reasonable doubt. Then, on four other occasions, he asked the venire as a whole if they could be impartial, if they understood that defendant is innocent until proven guilty beyond a reasonable doubt, and if they had a problem meeting those standards or making those distinctions. The trial judge then answered questions from the individual

470

prospective jurors on the subject, further explaining the process to them. We find that such explanation and questioning clearly meet the requirements of *Zehr* as approved in *Emerson*, that the trial court adequately ensured a fair and impartial jury and there was no error.

For all of the foregoing reasons, defendant's conviction is affirmed.

Affirmed.

RIZZI and CERDA, JJ., concur.