**UNITED STATES of America ex. rel. William CARSON, Petitioner,**

v.

**Howard A. PETERS, III, Respondent.**

**No. 93 C 2054.**

United States District Court, N.D. Illinois, E.D.

April 20, 1993.

James N. Perlman, Cook County Public Defender's Office, Chicago, IL, for petitioner.

Terence Madsen, Atty. Gen.'s Office, Chicago, IL, for respondent.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This case comes before this court on a Petition for Writ of Habeas Corpus ("Petition") ordering the release from custody or retrial of Petitioner, William Carson ("Petitioner"), pursuant to 28 U.S.C. § 2254. The Respondent, Howard A. Peters, III, the Director of the Illinois Department of Corrections ("Respondent") has filed an answer to the Petition and moves that it should be denied.[1] After reviewing the Report of Proceedings, Common Law Record, and Supplemental Record of the Petitioner's trial in the Circuit Court of Cook County, Illinois, as well as the briefs and opinion filed on the Petitioner's direct appeal to the Appellate Court of Illinois, this court grants the Respondent's motion and denies the Petition for the reasons discussed below.

## PROCEDURAL HISTORY

Petitioner, an inmate of the Pontiac Correctional Center, was convicted for the murder of Terrence Jones after a jury trial in the Circuit Court of Cook County, Illinois. On May 12, 1988, he was sentenced to 28 years imprisonment. (*Answer*, 2). The Petitioner directly appealed his conviction, raising four

---

1. Respondent's "Answer and Motion to Deny with Supporting Memorandum of Law" is henceforth cited as "Answer."

issues including whether his due process right to a fair trial under the Fourteenth Amendment was violated when the trial court refused to allow the defense to introduce into evidence statements of his co-defendants which were exculpatory to him. (*Petition*, 2). On November 12, 1992, the Appellate Court affirmed the conviction. (*Petition*, 2–3). Subsequently, the Petitioner filed a Petition for Leave to Appeal to the Illinois Supreme Court, again raising this issue (among others); this petition was denied on February 3, 1993. (*Petition*, 3). On April 6, 1993, the Petitioner filed a Petition for a Writ of Habeas Corpus with this court based upon the trial court's failure to admit his co-defendants' statements.

■ Before a person may bring a constitutional claim in a federal habeas petition, he must have exhausted his state remedies. *See, Mason v. Gramley*, 9 F.3d 1345, 1347 (7th Cir.1993). In this case, the Petitioner is not required to have pursued a collateral remedy in state court in order to exhaust his state remedies. "The general rule in Illinois is that affirmance of a conviction on appeal acts as *res judicata* for purposes of a subsequent post-conviction proceeding concerning all issues that were raised or that could have been raised in that appeal." *Gornick v. Greer*, 819 F.2d 160, 161 (7th Cir.1987).[2] Accordingly, the Petitioner exhausted his state remedies by raising the question at issue on direct appeal.

### BACKGROUND

■ Under 28 U.S.C. § 2254(d) factual findings by a state court "are presumed to be proper in a federal habeas corpus proceeding, if the findings are made after a hearing on the merits, and are fairly supported by the record." *Wilson v. McCaughtry*, 994 F.2d 1228, 1230 (7th Cir.1993). Factual findings made by a state appellate court are accorded the same statutory presumption of correctness as findings made by a state trial court. *Lewis v. Huch*, 964 F.2d 670, 671 (7th Cir.1992).

Accordingly, the following facts are taken from the Appellate Court's opinion in this case, *People v. Carson*, 238 Ill.App.3d 457, 179 Ill.Dec. 531, 606 N.E.2d 363 (1 Dist. 1992):

At approximately 9:30 p.m. on May 20, 1986, 12–year–old April Murdock and 16–year–old Terrence Jones played outside of the high-rise apartment buildings at the Cabrini–Green housing project where they lived. April heard a shot and felt a bullet pass by her ear. She and the victim ran toward the building at 1159 North Cleveland Avenue and paused near the outside stairs. April looked up at the 534 West Division Street building to determine the source of the shots. She testified that her attention was focused on that particular building because shots were often fired from there. She observed a window on the third floor from the top of the building with orange curtains and two people with dark skin looking out of the window. April testified that one person wore a white hat and the other held a rifle with a scope attached, and the rifle was pointed at the 1159 North Cleveland Avenue building where April and the victim stood. April ran into the 1159 North Cleveland Avenue building and within moments heard three or four more shots fired, one of which hit the victim, who fell to the ground.

Detective Thomas Blomstrand testified that April showed him and his partner, William Baldree, which window had the orange curtains at 534 West Division Street. Outside of apartment 1402, the officers noticed a gang symbol for the Black Gangster Disciples with the word "Mickey" written across it. Leslie Mickey, co-defendant Robert Mickey's mother, allowed the officers to look into her son's bedroom, where orange curtains hung. The officers noticed that from the window there was a clear line of sight to the area where the victim had been shot. Detective Blomstrand testified that he recovered a white cap from the apartment of David Carson, the defendant's brother.

---

**2.** "[A] petition for a writ of habeas corpus should be dismissed for failure to exhaust the Illinois post-conviction remedy only if there is direct precedent indicating that under the particular circumstances of a prisoner's case the waiver [and res judicata] doctrines will be relaxed." *Mason*, 9 F.3d at 1347, *citing, Gornick*, 819 F.2d at 161 (brackets deleted).

Officer De Rosa testified that on June 12, 1986, three weeks after the murder of Terrence Jones, he and his partner investigated a report of a man with a shotgun in the vicinity of Larrabee and Division Streets, which is where the 534 West Division Street building is located. Officer De Rosa observed defendant standing in the lobby of the building at 534 West Division Street holding a red and black rifle case, while another man stood next to defendant holding a sawed-off shotgun at his side. The two suspects fled into the stairwell and defendant was later apprehended on the 14th floor of the 534 West Division Street building. Inside the rifle case, the officers found a loaded .22 caliber Remington Speedmaster rifle and numerous rounds of ammunition.

Officer Chenow testified that he performed tests on the .22 caliber rifle and found that although he could not say conclusively that it was used to kill the victim, it could not be ruled out. Thereafter, defendant was advised of his constitutional rights and subsequently gave a detailed account of the murder to Detective Baldree, implicating himself in the crime.

Defendant also made a court-reported statement to Assistant State's Attorney Michael Gerber on June 13, 1986.[3] In the statement, he recounts that at approximately 9:30 p.m. on May 20, 1986, he was in Robert Mickey's bedroom in apartment 1402 at 534 West Division Street. Defendant's brother, David Carson, and Robert Mickey were also there. Defendant stated that Robert Mickey fired a shot from his window toward the building at 1159 North Cleveland Avenue in the direction of the victim. Defendant recalled that after the first shot, Mickey started shaking and could not hold the gun steady. Defendant, who admitted that he was wearing a white painter's cap at the time, wrapped his arms around Mickey in order to brace him, and another shot was fired toward the victim. Defendant further admitted that the gun recovered from him on June 12, 1986, was the same gun used in the murder. Defendant stated that he understood the victim to be a member of a rival gang, the Vice–Lords, which was "on bad terms" with defendant and Mickey's gang, the Black Gangster Disciples, and that the victim had previously shot at Mickey.

Defendant ... argues that the trial court erred when it refused to allow into evidence the statements of co-defendants David Carson and Robert Mickey because those statements were exculpatory as to defendant.

Defense counsel sought to introduce the statements of the co-defendants because of the similarity of the two statements and the fact that both [co-defendants] fail to state that the defendant had any role in the victims's murder. The absence of such nexus could cast serious doubt in the minds of the jurors that defendant was guilty of the charged offense or that his confession was voluntary.

*Id.* at 460–62, 179 Ill.Dec. 531, 606 N.E.2d 363.

In the case at bar, the trial court determined that the statements of the co-defendants were inadmissible because: (1) they were not made *spontaneously* to close acquaintances shortly after the crime occurred since the co-defendants had incentive not to implicate the Petitioner[4]; and (2) the co-defendants, because they were protected by the 5th Amendment, were not available for cross-examination. The Appellate Court affirmed, noting that additional evidence, such as the fact that the defendant was arrested in the location of the shooting with a rifle and bullets later shown to have similar characteristics to those used in the murder, also implicated the Petitioner. The Appellate Court further observed that, besides the fact that the Petitioner and co-defendant David Carson were brothers, the two co-defendants and the Petitioner were in the same gang. Ac-

---

**3.** Before trial, on a motion to suppress his statement, the Petitioner testified that his confession was coerced. After considering the evidence, the trial court found that the Petitioner was not subject to either physical or psychological coercion during his questioning.

**4.** For instance, the trial court noted that William Carson is the brother of David Carson. (R. 96:21–23)

cording to that Court, these relationships provided disincentive for both co-defendants not to implicate the Petitioner at the time of their arrest.

The Petitioner asserts that the trial court's failure to admit the statements of his co-defendants violated his due process rights to a fair trial and his right to present his defense under the Fourteenth and Sixth Amendments. Specifically, he argues that such failure was (1) against the manifest weight of the evidence, and (2) inconsistent with the fact that both co-defendants' statements were admitted into evidence at their trial by the same judge who presided over the Petitioner's trial. *Citing, Rivera v. Director, Department of Corrections,* 915 F.2d 280, 282 (7th Cir.1990).

### DISCUSSION

 "The federal habeas court 'can grant habeas relief only when there is a violation of federal statutory or constitutional law,' and reviews de novo such questions." *Middleton v. Murphy,* 1992 WL 601890, *4, 1992 U.S.Dist.LEXIS 21504, *11–12 (W.D.Wis.1992) (Crabb, J.). Hence, this court must review de novo the question of whether the trial court's refusal to admit the co-defendants' statements on the grounds that they constituted unreliable hearsay violated the Petitioner's constitutional rights.

In this case, the Petitioner seeks to admit extrajudicial declarations, not made under oath, by declarants who suggested that they, alone, committed the crime. These statements would generally be inadmissible under the hearsay rule. *See, People v. Bowel,* 111 Ill.2d 58, 66, 94 Ill.Dec. 748, 488 N.E.2d 995 (Ill.1986). In this regard, the Supreme Court has explained:

> The hearsay rule, which has long been recognized and respected by virtually every State, is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact. Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the

declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury.

*Chambers v. Mississippi,* 410 U.S. 284, 298, 93 S.Ct. 1038, 1047, 35 L.Ed.2d 297 (1973); *see also, Bowel,* 111 Ill.2d at 66, 94 Ill.Dec. 748, 488 N.E.2d 995.

Yet, sometimes conflicts arise "between the rights of criminal defendants under the sixth and fourteenth amendments to present evidence in their own defense and the state's 'sovereign prerogative' to regulate the presentation of evidence in its courts." *Cunningham v. Peters,* 941 F.2d 535, 538 (7th Cir.1991). In such instances, this court must "evaluate the exculpatory significance of relevant and competent evidence and then balance it against the competing state interest [in the hearsay rule]." *Id.* When testimony bears persuasive assurances of reliability, and "constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers,* 410 U.S. at 302, 93 S.Ct. at 1049.

"The Supreme Court of the United States, and [the Illinois Supreme Court] have held that where there are sufficient indicia of trustworthiness of … extrajudicial statements [such as co-defendants' statements], a declaration may be admissible under the statement-against-penal-interest exception to the hearsay rule." *Bowel,* 111 Ill.2d at 66, 94 Ill.Dec. 748, 488 N.E.2d 995. "Hence, admission of such hearsay requires a 'considerable assurance' of reliability by objective indicia of trustworthiness." *Cunningham,* 941 F.2d at 540.

In *Chambers,* the Supreme Court held that "some exculpatory statements contained a 'persuasive assurance of trustworthiness,' because (1) the confession was spontaneously made to two close acquaintances shortly after the murder occurred; (2) each statement was corroborated at trial by other independent evidence; (3) the confession was self-incriminating and unquestionably against penal interest; and (4) the declarant was available for cross-examination." *Chambers,* 410 U.S. at 300–301, 93 S.Ct. at 1048, *as summarized*

*by, Cunningham,* 941 F.2d at 539. Although the *Chambers* factors are instructive, they are "not exhaustive or absolute," and a defendant is not *required* to meet all four factors before a hearsay statement will be admitted. *Cunningham,* 941 F.2d at 540.

It is unclear whether *Chambers* actually "implies independent federal review of reliability." *Lee v. McCaughtry,* 933 F.2d 536, 538 (7th Cir.1991). The Seventh Circuit has noted that:

> [o]nce a state has brought its rules of evidence into line with constitutional norms, there is little point in case-by-case federal review of evidentiary rulings.... The federal interest lies in ensuring that states conduct their criminal process in a way likely to separate the guilty from the innocent, ... not in second-guessing every evidentiary ruling.

*Id.* In this court's de novo review of the court's decision, it is essentially duplicating the inquiry of the Illinois court by examining the reliability of the co-defendant's statements. Hence, this review would appear to be satisfactory whether or not *Chambers* requires it. *See, Id.*

Applying the *Chambers* factors to the case at bar, this court finds that the co-defendants' statements do not have a persuasive assurance of trustworthiness to outweigh the competing state interest in the hearsay rule. First, these statements were not *spontaneously* made to close acquaintances shortly after the murder occurred.[5] In fact, these statements were made by David Carson, the brother and co-gang member of the Petitioner, and Robert Mickey, a co-gang member of the Petitioner. The close relationships between the Petitioner and his co-defendants suggest that their statements were not spontaneous because the co-defendants were likely to have had a strong motive not to incriminate the Petitioner.

As to the second factor, the Petitioner is correct that the co-defendants' statements are corroborated by other facts in the case. Yet, the corroborated facts, themselves, do not exculpate the Petitioner. The Petitioner notes that "(a) both [co-defendants'] statements are virtually identical with each other; (b) April Murdock stated that one of the snipers had on a white hat; David Carson's statement said that he had on a white hat; (c) April said she could see a scope on the rifle, the statements said that a scope was used; (d) multiple shots at separate intervals were fired and this is corroborated by the statements; and (e) the statements contain dates, times, and locations which are consistent with the facts." (*Petition,* 16). Although these facts indicate that the co-defendants were at the scene of the crime, they fail to suggest that the Petitioner was *not* a participant. Accordingly, this factor does not weigh heavily in favor of admitting the co-defendants' statements as exculpatory evidence. *See, Lee,* 933 F.2d at 537–38.

The third factor—that the co-defendants' statements were against penal interest—is fulfilled because the statements clearly implicated them in the murder.

The fourth criteria is not fulfilled because the declarants, by exercising their 5th Amendment rights against self-incrimination, were not available for cross-examination. Moreover, during the trial, the parties acknowledged the co-defendants' unavailability. (*Transcript,* 98: 1–10). Cross-examination would be extremely useful in this case because the co-defendants' statements do not expressly inculpate or exculpate the Petitioner. Hence, the co-defendant's unavailability for cross-examination increases the uncertainty as to what degree these statements actually show the Petitioner's innocence.

Accordingly, taking all of the *Chambers* factors into account, the co-defendants' statements lack sufficient indicia of trustworthiness to provide a basis for habeas relief. Yet, because the *Chambers* factors are not dispositive, the co-defendants' statements may still be admissible if such statements are sufficiently trustworthy.

■ As to the trustworthiness of these statements, the Petitioner correctly asserts that, "there is a reciprocal relationship be-

---

5. This court acknowledges that the fact that the statements were made to the police instead of close friends or acquaintances bears little weight with respect to finding spontaneity. *See, Rivera,* 915 F.2d at 282.

tween hearsay evidence that was sufficiently reliable to have been offered against an accused and then later offered in a co-defendant's favor." *Cunningham,* 941 F.2d at 539, *citing, Rivera,* 915 F.2d at 282. Generally, when the State considers hearsay evidence to be sufficiently reliable to use against a co-defendant, it is proper that such evidence should be considered reliable enough to admit in favor of a defendant. *Green v. Georgia,* 442 U.S. 95, 96–97, 99 S.Ct. 2150, 2151, 60 L.Ed.2d 738 (1979).

▪ In the case at bar, however, the facts suggest that the co-defendants' statements *were* more reliable when offered to implicate the declarants than they would be to exculpate the Petitioner. This can be illustrated by distinguishing this case from *Rivera,* where the court found a "reciprocal relationship" pertaining to hearsay evidence when a co-defendant's statement was both inculpatory to the declarant and exculpatory to the defendant. In that case, (1) the outcome turned only on the testimony of the defendant; and (2) there was *no suggestion* that the witness had any motive to exculpate the defendant. *Rivera,* 915 F.2d at 281–282, *see, Cunningham,* 941 F.2d at 540–541. In this instance, unlike in *Rivera,* the co-defendants had a strong motive to exculpate the Petitioner. The existence of this motive compromises the value of the co-defendants' statements as evidence of the Petitioner's innocence. Furthermore, as distinguished from *Rivera,* this case does not turn entirely upon the Petitioner's testimony. In fact, in addition to the Petitioner's confession, other evidence, including that he was arrested near the location of the crime with (1) bullets similar to those used in the crime and (2) a rifle with a scope that could not be ruled out as a murder weapon, also links the Petitioner to the crime.

Finally, the Petitioner argues that the trial court should have applied Illinois precedent set by *People v. Kokoraleis,* 149 Ill.App.3d 1000, 103 Ill.Dec. 186, 501 N.E.2d 207 (2nd Dist.1986). The Petitioner asserts that this case is similar to *Kokoraleis,* wherein the defendant was arrested after his brothers were arrested for the same crime and made confessions that did not inculpate him. In that case, the court held that the jury, rather than the court, should weigh factors in order to assess the reliability of the brothers' statements. Among these factors were: (1) that the defendant's confessions were consistent with certain facts in the record, and (2) that the brothers' may have failed to implicate the defendant because they were unaware that the officers did not know the defendant's identity. *Id.* at 1026, 103 Ill.Dec. 186, 501 N.E.2d 207.

The Petitioner's application of *Kokoraleis* to the case at bar is problematic for several reasons. First, it is within the province of the trial court, and not the jury, to determine admissibility of hearsay evidence based upon trustworthiness. *See, Cunningham,* 941 F.2d at 538. Second, *Kokoraleis* is distinguishable from this case. First, in that case, the defendant's statement was inconsistent with other evidence, whereas in this case, as discussed above, other evidence links the Petitioner to the crime. Second, in *Kokoraleis,* the court did not weigh any motive that the co-defendants may have had which could cast a shadow on the reliability of their statements.

### CONCLUSION

Accordingly, the Respondent's motion to deny the Petition is granted, the Petitioner's request for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and this case is dismissed.

