William **CARSON,** Petitioner–Appellant,

v.

Howard A. **PETERS,** III, Director of the **Illinois Department of Corrections,** Respondent–Appellee.

No. 94–1817.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1994.

Decided Dec. 7, 1994.

James N. Perlman, Office of Cook County Public Defender, Chicago, IL (argued), for petitioner-appellant.

Terence M. Madsen, Asst. Atty. Gen., Michael A. Hurst (argued), Office of Atty. Gen., Crim. Appeals Div., Chicago, IL, for respondent-appellee.

Before CUDAHY, EASTERBROOK, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

A jury convicted William Carson of murder for his role in the assassination of Terrence Jones, a member of a rival gang. Jones was slain by a bullet from a high-powered rifle of a kind later found in William's possession. An eyewitness testified that the shots were fired from a particular window; the witness saw a rifle (with telescopic sight) and two men, one wearing a white cap. Police learned that the window opened into the bedroom of Robert Mickey. Mickey and David Carson (William's brother) soon confessed to the murder. Each inculpated the

other; David also said that he had worn a white cap. Later the police found William carrying a rifle. He confessed to a role in Jones's execution, helping Mickey to steady his aim. William stated that the rifle he had been toting was the murder weapon (ballistics analysis confirmed that a gun of this type fired the fatal bullet but could not identify the particular weapon); William also said that he had been wearing a white cap that day. David and William Carson, like Mickey, belong to the Black Gangster Disciples; Jones was a member of the Vice Lords.

William Carson sought to use as evidence at his trial the statements Mickey and David Carson had given. David's statement that he wore a white cap would tend to undercut William's statement to the same effect, William asserted. Because neither of the other statements mentions a third participant, William contended, both statements implicitly exculpated him.[†] The trial judge excluded these statements on hearsay grounds. *Chambers v. Mississippi,* 410 U.S. 284, 298–303, 93 S.Ct. 1038, 1047–50, 35 L.Ed.2d 297 (1973), and *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), hold that states must allow defendants to put reliable third-party confessions before the jury, despite the hearsay rule, when necessary to assist in separating the guilty from the innocent. The trial judge concluded that the statements William sought to introduce are not reliable: the portions arguably exculpating William did not inculpate the declarants, and the statements had been made, before William's apprehension, by persons with every reason to protect him if they could. (Recall that David is William's brother, and both of the declarants are his fellow gang members.) The court of appeals affirmed, *People v. Carson,* 238 Ill.App.3d 457, 179 Ill.Dec. 531, 606 N.E.2d 363 (1st Dist.1992), stressing these considerations and concluding that the trial court had not abused its discretion. The federal district court then denied William's petition for a writ of habeas corpus,

---

[†] William asserts that neither of the other statements mentions a third person, the state's brief agrees, and the other judges who have considered the case proceeded on this premise. Yet David Carson's statement does mention a third person. He said that after the fatal shot had been fired, he "took back the rifle, rewrapped it in the sheet, and carried it down to the third floor where he gave it to a fellow disciple named 'Willkill.'" No one has made anything of this, and we therefore follow the parties' lead in disregarding it.

847 F.Supp. 547 (1993), observing that the state court made an honest attempt to apply *Chambers* and could not be said to have subordinated William's legitimate interest in presenting a defense to a mechanical application of the hearsay rule.

William's appeal stresses that the other confessions were introduced into evidence against their makers. If a statement is reliable enough to condemn its author, how can it be too unreliable to use when it cuts against the prosecutor? The answer is that different parts of a statement may have radically different degrees of reliability. People would rather be free than in prison, so self-accusatory statements are usually reliable. Psychoanalysts believe that they know why some innocent people condemn themselves, but no one doubts that the authors of incriminatory statements are much more likely to be guilty than are persons who proclaim their innocence. Yet persons willing to furnish the state with evidence against themselves—perhaps hoping to avoid capital punishment or otherwise to win favorable treatment—may harbor grudges against enemies or seek to protect friends. Portions of inculpatory statements that pose no risk to the declarants are not particularly reliable; they are just garden variety hearsay. That recognition supplies the basis of *Williamson v. United States*, — U.S. ——, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), which holds that in federal cases judges must separate the incriminatory portions of statements from other portions for purposes of Fed.R.Evid. 804(b)(3). Although *Williamson* dealt with a statement introduced by the prosecutor, and defendants have an easier time under the second sentence of Rule 804(b)(3), which allows the accused to introduce hearsay if "corroborating circumstances clearly indicate the trustworthiness of the statement", this does not undermine the recognition that inculpatory portions of a statement are more reliable than others. Nothing in the Constitution compels courts to disregard this element of human nature. *Cunningham v. Peters*, 941 F.2d 535, 540 (7th Cir.1991).

The fact that the statements did not mention William Carson did not directly inculpate the declarants. David Carson described his role and Robert Mickey's. Mickey described his role and David Carson's. Omitting to identify, and describe the role of, a third person did not strengthen the state's evidence against either Mickey or David Carson. We asked in *Rivera v. Director*, 915 F.2d 280, 282 (7th Cir.1990), how reliable a confession has to be to satisfy *Chambers* and answered that "if a confession is sturdy enough for the state to use in its own case—if it is the sort of evidence that prosecutors regularly use *against* defendants—then defendants are entitled to use it for their own purposes." *Lee v. McCaughtry*, 933 F.2d 536, 537 (7th Cir.1991) (emphasis in original). *Williamson* tells us that portions of a confession that do not inculpate the declarant are not reliable enough for prosecutors to use against anyone other than the declarant. The Constitution therefore did not compel Illinois to let William Carson use the omissions from the Mickey and David Carson statements.

David Carson's statement that he wore a white hat did tend to inculpate him—the witness had seen a white hat—and therefore is more reliable. We may assume that it is also exculpatory from William's perspective because it may have made the jury leery of the other details in William's confession. Is this evidence so powerful that the Constitution does not let a state treat it as hearsay? Let us disregard the Constitution for a moment and ask the question from the perspective of Rule 804(b)(3). Did "corroborating circumstances clearly indicate the trustworthiness of the statement"? The state judges thought not. David Carson, knowing that he had been caught, had every reason to protect his brother, who was not yet a suspect. If neither Mickey nor David Carson mentioned a white hat, the police might suspect that a third person was involved and go looking for one; by mentioning the hat David diverted attention from his brother at little if any cost to himself.

So the state courts reasoned. We can imagine contrary arguments; a judge might have treated David's statement as riskier (and therefore more reliable) than the state judges did. But *Chambers* and *Green* do not set the federal courts in the role of kibitzers

of every evidentiary ruling. See *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Brecht v. Abrahamson*, —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The point of *Chambers* is that "the hearsay rule may not be applied *mechanistically* to defeat the ends of justice." 410 U.S. at 302, 93 S.Ct. at 1049 (emphasis added). We have understood *Chambers* and *Green* as establishing the rule that "if the defendant tenders vital evidence the judge cannot refuse to admit it without giving a better reason than that it is hearsay." *Rivera*, 915 F.2d at 281–82. If the state judge *does* give a "better reason," then *Chambers* and *Green* have served their purpose—to relax the stranglehold of maxims and get judges to think functionally. "*Chambers* did not do away with the hearsay rule. The Supreme Court contemplated that the judge would be a gatekeeper, that unreliable statements could be excluded.... The Court's objection was to the mechanical invocation of the hearsay rule, to the state's unwillingness to show *any* concern for the reliability of its fact-finding process. *Chambers* means that states must revise their hearsay rules to admit reliable declarations against penal interest. Once a state has brought its rules of evidence into line with constitutional norms, there is little point in case-by-case federal review of evidentiary rulings." *Lee*, 933 F.2d at 538 (emphasis in original).

Illinois has conformed its domestic law of evidence to the approach of *Chambers* and *Green*. See *People v. Bowel*, 111 Ill.2d 58, 68, 94 Ill.Dec. 748, 753, 488 N.E.2d 995, 1000 (1986). Hearsay is admissible under *Bowel* if the defendant provides "considerable assurance" of its trustworthiness. 111 Ill.2d at 67, 94 Ill.Dec. at 753, 488 N.E.2d at 1000. The trial and appellate courts of Illinois concluded that William Carson had not satisfied this standard. The conclusion was reasoned and is reasonable. Cf. Joseph L. Hoffman & William J. Stuntz, *Habeas After the Revolution*, 1993 Sup.Ct.Rev. 65, 99–108. Whether or not it is the conclusion members of this panel would have reached had one of us presided at William's trial is not dispositive. *Chambers* does not call for the best possible decision, or even the one judges would render with the benefit of extra time for reflection; the Constitution is satisfied when the court considers the real interests at stake and offers a trial that reliably separates the guilty from the innocent. William's trial satisfied that standard.

AFFIRMED.